JENNIE OWENS v. YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY.

[47 South. 518.]

1. RAILROADS. *Injury to persons living in cars. Negligence. Rules of company.*

rule of a railroad company, constantly disregarded by it and never brought to the attention of its employes, does not affect its liability for negligence to a member of the family of its extra gang foreman living with him in its camp cars to its knowledge and in accordance with its custom; the foreman and the members of his family never having heard of the rule.

2. SAME. *Degree of care due.*

A railroad company allowing the family of its extra gang foreman to live with him in its camp cars owes them the duty of ordinary

care, and cannot escape liability to one of them arising from its negligence by showing simply that it did not wilfully injure her.

3. SAME. *Case. Question for jury.*

Whether a railroad company used the ordinary care which it owed to the members of the family of its foreman, who with its knowledge and consent, and in accordance with its custom, lived with him in its camp cars, is a question for the jury, the plank walk between the doors of the two cars being only twelve to fourteen inches wide, while ordinarily those furnished were thirty to thirty-six inches wide, and the car having, the night before the foreman's daughter was injured by the tilting of the plank while she was crossing it, been put by the company on an unballasted roadbed where one rail of the track was higher than the other.

FROM the circuit court of Yazoo county.

HON. WILEY H. POTTER, Judge.

Jennie Neal Owens, an infant, suing by her mother as next friend, appellant, was plaintiff in the court below; the railroad company, appellee, was defendant there. From a judgment, predicted of a peremptory instruction, in defendant's favor, the plaintiff appealed to the supreme court.

The opinion of the court state the facts.

*M. B. Grace,* for appellant.

The evidence shows that there was a general custom of the railroad company to furnish to extra gang foreman and their families camp cars properly fitted up for the purpose of being used as their homes. Of course the duty thereupon devolved upon the railroad company to furnish reasonably safe cars and appliances for such occupancy. This was read into every contract of employment and became a part of the contract when a section foreman would be ordered to take an extra gang to a place where there was no section house. Furthermore it was necessary that such cars should be kept in a reasonably safe condition as they were moved to and fro. Inasmuch as the families of the foremen live in such cars by invitation and consent of the railroad company, the company owes a duty of care and protection to the members of his family as well as to the foreman, in

every case. *White v. Louisville, etc., R. Co.*, 72 Miss. 12, 16 South. 248; *Illinois, etc., R. Co. v. Woolley*, 77 Miss. 297, 28 South. 26.

It has been held that one who boards a railroad freight train while it is being loaded, with the permission of the conductor, is not a trespasser or mere licensee and is not to be deemed guilty of contributory negligence by reason of so doing, unless he does so with knowledge that the conductor is exceeding his authority and violating the prescribed rules of the railroad company, in allowing him thus to board the train. *Alabama, etc., R. Co. v. Yarbrough*, 83 Ala. 238, 3 South. 447; *Wagner v. Missouri, etc., R. Co.*, 97 Mo. 512, 10 S. W. 486; *Young v. Pennsylvania etc., R. Co.*, 115 Pa. St. 112, 5 Cent. Rep. 848.

The railroad company was under a duty to furnish the appellant's father and family a reasonably safe place in which to reside, if it undertook at all to furnish a dwelling place. But in this case, the tracks were improperly constructed and in dangerous condition, and the conductor wilfully and maliciously refused to replace the cars, but, with an utter disregard of human life, allowed the engine and train to kick the cars and let them roll and stop where they would.

Inasmuch as the appellant was upon the cars by the acquiescence of the railroad company she was not a trespasser. As a child of tender years she was compelled to go wherever her father went. *Alabama, etc., R. Co. v. Yarbough, supra; St. Joseph, etc., R. Co. v. Wheeler*, 35 Kan. 185, 10 Pac. 461.

Appellant's suit is not based upon contract, but is a case in tort. She was not a licensee of the company. And the duty of the railroad company to use reasonable means to protect her was not complied with, hence the company is liable for negligence, since the negligent acts of its employees, other than her father, caused the injury. *Mackey v. Vicksburg*, 64 Miss. 777, 2 South. 178; *Stevens v. Yazoo, etc., R. Co.*, 81 Miss. 195, 32 South. 311.

Even if appellant's father had been guilty of negligence, this

would not preclude appellant, an innocent person, from recovery. *Westbrook v. Mobile, etc., R. Co.,* 66 Miss. 560, 6 South. 321; *Vicksburg v. McLean,* 67 Miss. 4, 6 South. 744.

*Mayes & Longstreet,* and *C. N. Burch,* for appellee.

· No privity of contract existed between the appellant and appellee in any way imposing on the appellee the obligation of providing appellant, a nine year old girl, with all possible safeguards from injury in and about camp cars. Such cars are necessarily rude affairs, and cannot be provided with all conveniences.

The facts are uncontroverted that appellants's father and mother had used these cars for three weeks before the injury; that the cars were under the dominion and control of appellant's father; and that at no time had any complaint ever been made by appellant's parents to the appellee as to the insufficiency of any of the appliances of the cars.

The appellant was not a child below the years of discretion. She was between nine and ten years old, and appears to have been a bright and intelligent child. Under the circumstances she was a mere licensee, and it would be straining the law to say that under such circumstances the railroad company was bound to know that a child of her age was a member of the family and to take such precausion and to provide such safeguards in rough camp cars as would prevent any possibility of injury to her.

Suppose the child had fallen from one of the open side doors of the camp car, from which there can not well be permanent steps to the ground. Could it then be argued with effect that the railroad company was under obligation to provide safeguards across the door such as would prevent injury to a child of her age, or to provide permanent steps so safely and widely built. as to afford the child safe and convenient modes of ingress and egress?

As appellant was a mere licensee, the railroad company was not under positive and existing obligations to her except to re-

frain from wilful injury or from such acts of wilful reckless-
ness, with full knowledge of her situation, as would cause her
injury.

Even if it be said that appellant's father, the section foreman,
has caused his wife and daughter to occupy the camp car with
him, and therefore the wife and daughter were not trespassers,
yet the fact remains that under the circumstances the wife and
daughter would be mere licensees as to whom the appellee would
owe only the duty to avoid wilful or intentional injury. *Lovett
v. Railroad Company,* 79 S. W. 514.

It is shown that the mode of passage between the two cars
was reasonably safe for a prudent and reasonable person, and
that it could be used for the purposes for which it was pro-
vided. In fact, the evidence discloses that such mode of pass-
age was the one in long and continued use generally between
camp cars. The character of the passageway was obvious, and
could easily have been seen by appellant. It had been used the
very morning of the accident by the father and mother of ap-
pellant, and also by appellant herself. Under such circum-
stances, the court below properly awarded a peremptory instruc-
tion in favor of the appellee. *Turner v. Railroad Co.,* 100 N.
W. 268.


WHITFIELD, C. J., delivered the opinion of the court.

This action is by Jennie Owens, a minor, about nine years of
age at the time of the injury, through her next friend, for $15,-
000 damages for an injury charged to have been negligently in-
flicted upon her by the appellee. At the conclusion of the testi-
mony, the court, upon motion of appellee, excluded the testi-
mony of the plaintiff, and gave a peremptory instruction for the
defendant, and this is assigned for error. This case is a very
delicately balanced one upon its facts, and therefore a careful
statement of the case will be made.

The father of the plaintiff had been a section foreman. He
was at the time of his injury the foreman of an extra gang.

One difference between the two is that the section foreman is stationed at a particular place, and lives in an ordinary house with his family, whilst the foreman of an extra gang lives with his family in a set of cars known as "camp cars;" in other words, in a movable house, which is taken hither and thither as the railroad company's needs may require. It is quite clearly shown that it was the practice and custom of appellee to furnish such camp cars, and to allow the family of the foreman to live with him in this movable house. The camp cars in question were composed of several box cars. One the foreman and his family used as a bedroom. The next they used as a dining room, and in the others the men composing the gang slept. Ingress and egress from one of these cars to the other was effected by means of a door cut out of the end of these cars, of about the usual size of a door. A small board, about twelve to fourteen inches in width, and just long enough to reach between the two cars, was used as the platform, or rather footway, between the cars. When the cars would be moved, this board was taken up and put inside of a car. When the cars would stop, it was put back again between the doors of the two adjoining cars, the bedroom and the dining room, by the company. The place on the track at which these camp cars were first placed was perfectly level, and the roadbed properly constructed. This family, father, mother, and the daughter, remained in these cars at this original point for about three weeks, using this plank without any accident occurring. One night after this a freight train of the defendant company moved these cars from their place, in order to connect with a car which it was desired to take away, and when this freight train turned the camp cars loose, instead of placing them where they had been, it kicked them loose and let them roll, to stop where they might. They did stop at a different place on the roadbed, where the track was not level, one rail being higher than the other, inducing a slanting position, or incline, of the roadbed, and the roadbed, at this point, was not ballasted. The next morning, after this material change in loca-

tion, the plaintiff in attempting, for the first time after such change, to go from the bedroom into the dining car, stepped upon this connecting plank, and the plank tilted and threw her down on the rail, producing the injuries complained of. The grandfather of the plaintiff, introduced by the defendant company, shows without dispute that it was the duty of the company to furnish these cars, and that a plank or platform connecting the doors of the two adjoining cars, in order to be the proper width, should have been of the width of from two and a half to three feet, or of the width of the door. He states that this width was the customary width, and that the company usually furnished that sort of connecting platform or plank. The particular plank in this case was only twelve to fourteen inches in width. It is made clear that the company allowed at the time of this injury, and had been allowing, the families of the foreman of extra gangs of this sort to live with them in these camp cars, and it is clear that the company knew that this wife and daughter lived with the husband and father in these cars, and permitted them so to live. That was the customary thing at the time of this injury. A rule seems to have been adopted forbidding this, which rule was never brought to the knowledge of the plaintiff, or her father or her mother, until after this injury, and for that reason, of course, cuts no figure in this case. The girl in question was the average girl of about nine years. There is no effort, one way or the other, to show precocity or dullness of intellect. It is shown that when she was about six months old, she suffered an injury in one of her hip bones; the result which came about was that one leg was shorter somewhat than the other, and caused her to limp, and, when she walked, resulted in her putting her toe to the ground instead of her heel. The testimony very satisfactorily shows that, after treatment by a reputable physician for a period of two months for this ailment some six months before this injury, this early trouble had been practically cured, and there is nothing whatever in the testimony to suggest that her fall was in any way due to this early

trouble. That may be, therefore, put aside as uninfluential in arriving at the proximate cause of this injury. It also appears from the testimony of the girl that when she put her foot upon this little plank on the morning of the injury, using it for the first time in that new location, the plank tilted, and she expressly states, with great clearness, that it was the slanting position of the rails, the incline induced by the unlevelness, which caused the plank to tilt, and throw her down on the rail. She swears to this positively. There is no question here of contributory negligence. This action is by the child alone for the injuries to herself, and there is nothing in the testimony which would warrant the court in saying as a matter of law that the child herself could be charged with contributory negligence.

It is very earnestly insisted by the appellee that these three persons had used this plank for three weeks constantly just prior to this injury, and that no accident had happened during that time, and that no complaint had been made of the plank as unsafe, and that from these and other circumstances it was clear as a matter of law, that this plank, constituting the passageway, was a reasonably safe passageway; but this argument fails entirely to take account of the very important facts that there had been overnight a complete change in the character of the track on which these camp cars were left to stand. The first place had been level and properly constructed; the second was unlevel and slanting, and not ballasted—most material differences, entering into the question of the safeness, of this plank used as it was. It might have been safe possibly under favorable conditions as to the levelness of track, and unsafe where it spanned the distance between two tilted cars; and a plank so small might well have been seriously influenced by slight changes of this sort as regards its safeness for such use. There is nothing in the evidence, it must be remembered, to contradict the positive statement of the girl that her fall was directly due to the tilting of the plank, and that that was directly due to the fact that one rail was higher than the other; in other words, that

there was a slanting attitude of the rail and roadbed, and, of course, of the car. Then it is most earnestly insisted that the testimony of different witnesses shows that this appliance was safe; that the railroad had furnished the usual passageway; that it had done what its custom and practice required, and that the passageway which it furnished, to wit, this plank, was a reasonably safe appliance; and that this appeared so clearly that the court could know it to be so safe from this testimony as a matter of law. But this argument overlooks two most material facts: First, the differences we have just pointed out in the two location of the camp cars; and, secondly, the potent fact that this very man had testified that such plank, to conform to the usage and custom of the company, had to be from two and a half to three feet wide, whereas, this one was only twelve to fourteen inches wide. Finally, it is most earnestly argued that this little girl at most could only be said to be a mere licensee; that she had no contract relation with the company; that there was no privity of contract, and no relationship resulting from contract between her and the company; and that as a result of this the company owed her no duty save not willfully to injure her. To this argument there are two conclusive answers: First. This suit does not sound in contract. It does not proceed upon the basis of any contract relation whatever between the girl and the company. It is an action for the tortiously negligent act of the company. And second, it is not entirely accurate to say that she was a mere licensee. Undoubtedly she was not a trespasser in any sense. She was where she was with the full knowledge and consent of this company, in accordance with its usage and custom, and, being where she was with such full knowledge and consent on the part of the company itself, the company owed to her the nondelegable duty of the master to furnish a safe place to live, amongst other things being involved, a safe platform to pass from car to car, and it also owed her the duty of ordinary care. It certainly did not owe her the duty of extraordinary care in the absence of any contract relations, such as exist between the passenger and the company. It certainly did owe her

in her situation, being where she was, with the knowledge and consent of the company, the duty of ordinary care.

See, as directly in point on the foregoing proposition, the following case: *St. Joseph, etc., R. R. Co. v. Wheeler,* 35 Kan. 185, 10 Pac. 461. Indeed, we touch the crux of this case, reviewing the action of the court, which decided as a matter of law that she had no cause of action, when we determine what grade of care under the law the company was under the duty of exercising towards her situated as she was. We are clearly of the opinion that the degree of care was more than the duty of not willfully injuring her, that the company was due her ordinary care, and this, of course, brings us squarely to this question: The company owing the plaintiff the duty of ordinary care, was not the question whether that degree had been used, as shown by the evidence in the case, a question of fact, pure and simple, for the solution of the jury, and not a question of law for the court? Undoubtedly it was a question of fact, and the court clearly erred in not submitting that question of fact to the jury, under proper instructions, for its solution.

We have not often seen a case in which what we have said in in the case of *Bell v. Southern Railroad Company,* 87 Miss. 234, 30 South. 821, fits so perfectly. We there said, and we repeat it here once more, hoping that more heed may be given to it in the future, as the thoroughly safe rule for the guidance of courts below touching this matter: "So many questions are integrated usually into the solution of the question of negligence, it is so necessary to carefully examine all the circumstances making up the situation in each case, that it must be a rare case of negligence which the court should take from a jury." We think this case falls peculiarly within the principle just declared, and that there was error, and that it was fatal error, for the court to undertake to determine, as it did, as a matter of law the question of pure fact, whether the company had exercised towards this plaintiff under all the facts in evidence ordinary care.

Wherefore the judgment is reversed, and the case remanded for a new trial.                                        *Reversed.*