196 So.2d 343 (1967)
Johnnie WHITE
v.
MISSISSIPPI POWER & LIGHT COMPANY and Illinois Central Railroad Company.
No. 44281.
Supreme Court of Mississippi.
February 27, 1967.
*347 Wroten, Orlansky & Miller, Greenville, for appellant.
Bogen, Wilkes & McGough, Lake, Tindall, Davison & McGee, Greenville, Green, Green & Cheney, Bethel Ferguson, Jackson, for appellees.
RODGERS, Justice.
This is a suit for damages for personal injury resulting from an electric shock received by Johnnie White, the appellant. He filed the suit in the Circuit Court of Washington County, Mississippi, against appellees, Mississippi Power & Light Company and the Illinois Central Railroad Company (hereinafter called Electric Company and Railroad Company.) At the conclusion of the testimony, the court directed a verdict in favor of defendants, appellees here. A judgment was accordingly entered dismissing plaintiff's suit. Plaintiff has appealed to this Court, and contends that the trial court was in error in directing a verdict in favor of defendants, and made certain other contentions which will be discussed separately.
These are the salient facts: On October 18, 1963, Johnnie White, appellant, was engaged in "flagging trucks" and picking up rags found in slag being moved by the county trucks to the county roads. The trucks were being loaded by a "dragline" extending from a long metal `boom" or crane. The slag had been piled around and near poles and high voltage electric wires owned and operated by the defendant, Mississippi Power & Light Company. During the loading process, the regular "dragline" operator was called to another place to repair a vehicle and he directed his oiler-assistant to operate the dragline in his stead. During the absence of the regular dragline operator, the oiler continued loading the trucks, as they were "spotted" or placed in position by plaintiff and another employee. The crane or "boom" swung in a horizontal half-circle from the slag pile under the high voltage electric lines to the trucks. During this operation, the crane struck the high voltage lines. One witness testified that he heard a loud noise "like a backfire from a truck," and another witness said he saw a "flash" go down the boom and also saw it flash near the center of the body of the dragline. The plaintiff heard a noise and turned to run, but at that time he was shocked and seriously burned and injured. He was immediately taken to the hospital where he remained sometime. The testimony shows that he is permanently injured.
The appellant based his claim against the Railroad Company upon an alleged duty of the Railroad Company to prevent the Power Company from negligently constructing its power lines over the slag pile then being used by the county. He based his suit against the Power Company upon a charge of negligent construction of the high voltage line over the slag pile, and negligent failure of the Power Company to inspect and maintain its wires in a safe condition over the slag pile being used by the county. Appellees contend that they are not liable for the injury to appellant because (1) he was a trespasser upon the land of the Railroad Company at the time of the accident; (2) the Mississippi Power & Light Company had a statutory right to have its wires upon the land of the Railroad Company; and (3) it is not liable to trespassers or licensees upon the land of the Railroad Company. Moreover, it is said that appellant assumed the risk of danger of the power lines found upon the land of the Railroad Company.
In answer to the contention of appellees, the appellant asserts that he was not a trespasser because (1) the deed through which the Railroad Company obtained title to the particular lot of land, here involved, gave the county the right to use the land; (2) the county had been storing slag on the land since 1957, and the Railroad Company acquiesced in, and impliedly consented to, the use of the land by the county, and both appellees are now estopped "from raising the defense of alleged trespass;" and (3) the Electric Company had no right upon the land described as "Depot Grounds at Stoneville" *348 because the "Depot Grounds at Stoneville" did not "constitute a railroad within the meaning of Mississippi Code Annotated sections 2778 and 2780 (1956)," wherein the Legislature gave the Electric Company the right to erect its lines upon the railroad right-of-way, and denied that the Electric Company "was lawfully authorized to erect and maintain high tension lines across said parcel of land."
The appellant points out that the deed from W.E. Hunt, Maria Hunt and Katie H. Stone in 1885 to the Memphis & New Orleans Railroad and Levee Company was made "for railroad and depot purposes" and it is set out in the deed that "It is understood and agreed that the present * * * mode of egress and ingress of The Georgia Pacific Ry. Co. is not to be interfered with"; that said Railroad Company shall establish and maintain a regular local station at said Town of Stoneville, and "for the further consideration of said Railroad and Levee Company agreeing to comply with all the requirements of said above mentioned contract * * * we grant, bargain and sell unto the said Rail Road and Levee Company a right-of-way * * * in addition * * * to the above described right-of-way the said W.E. Hunt, Maria Hunt and Katie H. Stone hereby convey to the said Railroad and Levee Company the following lot or parcel of land." The deed described the parcel of land here involved. The deed contained the following: "It is understood and agreed * * * that a public roadway shall be kept open from the present public on Deer Creek to said depot grounds which shall be for the public convenience at and around said depot or station. To have and to hold for the purposes herein mentioned to the Memphis & New Orleans Railroad and Levee Company successors or assigns forever * * *."

I
There is some authority to support the appellant's contention that the agreement in a deed from a grantor to a railroad company requiring it to locate, construct and maintain a station or depot upon the land described in the deed, where it is a part of the consideration, is a covenant and is condition precedent or condition subsequent, as the case may be, and such covenant runs with the land. The breach of such a covenant renders the Railroad Company or its successors in title liable in damages. See cases collected in 74 C.J.S. Railroads §§ 484, 485, 488, 492 (1951).
Assuming that the appellant is correct in his contention that the deed gave the public a right of ingress and egress across the land involved, it did not give Washington County the unrestricted right to take possession of and totally cover with slag the parcel of land described in the deed for three reasons:
(1) The photographs filed as exhibits showed, and plaintiff admitted, that there is a roadway across the lot of land and as such it is land still used for the public convenience; (2) no objection has been made by the Railroad Company to the public use of the roadway; and (3) the testimony shows that no station or depot building has been on the lands here involved for more than forty years. The covenant in the deed was therefore breached many years ago. Where a covenant runs with the land, the covenant may be enforced by a member of a class of persons for whose benefit the deed is made although he is not a party to the instrument. A cause of action for the breach of a covenant accrues immediately upon its breach, and suit may be brought during the ownership of the assignee. On the other hand, actions for the breach of a covenant are subject to the defense of the statute of limitations, so that after the statute has run, suit may not be maintained to enforce the covenant. Scheller v. Tacoma Ry. & Power Co., 108 Wash. 348, 184 P. 344, 7 A.L.R. 810 (1919); 14 Am.Jur. Covenants, Conditions and Restrictions §§ 37, 39, 40 (1938). See also 74 C.J.S. Railroads § 93(b) (1951).
The county did not therefore have a right to invade the property here *349 involved where the right of the covenantee had lapsed because the right to enforce the covenant had been barred many years by the statute of limitations. Miss. Code Ann. §§ 709, 710, 743 (1956). It is not true, as contended by appellant, that the Railroad Company is estopped to defend the suit against it upon the ground that the county had been using the plot of land known as the "Depot Grounds at Stoneville" for many years without objection from the Railroad Company, and it thereby "acquiesced in, impliedly consented to, permitted and licensed the use of said premises by him and Washington County Road Department." At most, the failure of the Railroad Company to object to the use of the land by the covenantee could amount to no more than a license to go upon the land. The issue then is whether or not the county and its employees were "tenants at will," "licensees" or "trespassers" upon the property of the Railroad Company. Turner v. Morris, 196 Miss. 297, 17 So.2d 205 (1944); 52 Am.Jur. Trespass § 44 (1944); Annot. 76 A.L.R. 310 (1932).
The relationship of tenant-at-sufferance arises only when a person comes into possession of land lawfully but holds over wrongfully as a result of neglect on the part of the landowner to assert his right of possession. The relationship of tenancy-at-sufferance may be established by actual permission to occupy land, or permission may be implied from circumstances growing out of the long-time use of land with knowledge and the failure of the owner to object to the occupancy of the land. 51 C.J.S. Landlord and Tenant §§ 159, 176 (1947).
In Marlon Investment Company v. Conner, 246 Miss. 343, 349, 149 So.2d 312, 314, 315 (1963), we said that "A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." In 65 C.J.S. Negligence § 63(3) (1966) the textwriter said:
"A person is a trespasser where he enters on the property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in the performance of any duty to the owner or person in charge or on any business of such person, but merely for his own purposes, pleasure, or convenience, or out of curiosity, and without any enticement, allurement, inducement, or express or implied assurance of safety from the owner or person in charge."
See also Kelley v. Sportsmen's Speedway, 224 Miss. 632, 80 So.2d 785 (1955).
Long-time use of property with actual or implied knowledge of the owner may give rise to a sufficient inference to imply consent to the use of the property by the possessor. In 65 C.J.S. Negligence § 63 (26)b. (1966), it is said:
"Habitual or customary use of property for a particular purpose, without objection from the owner or occupant, may give rise to an implication of consent to such use, so that the users have the status of licensees, where such habitual use or custom has existed to the knowledge of the owner or occupant and has been accepted or acquiesced in by him."
In Marlon Investment Company v. Conner, supra, we also said:
"A licensee is a person who is privileged to enter upon land by virtue of the possessor's consent or permission. Permission is conduct justifying others in believing the possessor is willing that they shall enter if they desire to do so." 246 Miss. at 350, 149 So.2d at 315.
In Kelley v. Sportsmen's Speedway, supra, we said:
"A licensee is broadly defined as a person who enters upon the property of another for his own convenience, pleasure or benefit. In order to constitute the person so entering a licensee, his entrance upon the property of another must be pursuant to the license or implied permission *350 of the owner. 38 Am.Jur. 765, Negligence, par. 104." 224 Miss. at 643, 80 So.2d at 790.
See also 44 Am.Jur. Railroads § 425 (1942).
The appellant, as an employee of the Road Department of Washington County, was obviously not an "invitee" upon the property of the Railroad Company under the facts in the instant case. 44 Am.Jur. Railroads § 426 (Invitee) (1942). In 65 C.J.S. Negligence § 63(29) (1966), it was pointed out that:
"A `licensee,' as generally defined, is distinguished from an `invitee,' in that the licensee is on the premises by permission or sufferance only, and not by virtue of any business or contractual relation with the owner or occupant inuring to the mutual benefit of both * * *."
We have reached the conclusion from the foregoing authorities that the appellant was a "licensee" upon the land of the Railroad Company at the time he was injured. This being true, the Railroad Company owed no duty to him as a licensee, except to refrain from willfully or wantonly injuring him; or, as otherwise sometimes stated, "to refrain from injuring the licensee through such gross negligence as is equivalent to willfulness or wantonness." 65 C.J.S. Negligence § 63(32), (1966). Langford v. Mercurio, 254 Miss. 788, 183 So.2d 150 (Miss. 1966); Miss. Power & Light Co. v. Walters, 248 Miss. 206, 158 So.2d 2, 160 So.2d 908 (1963); Dry v. Ford, 238 Miss. 98, 117 So.2d 456 (1960); Bishop v. Stewart, 234 Miss. 409, 106 So.2d 899 (1958); Murry Chevrolet Co. v. Cotten, 169 Miss. 521, 152 So. 657 (1934).
The judgment of the trial court in sustaining a motion for a directed verdict in favor of the Railroad Company must therefore be affirmed.

II
There are two legal propositions asserted by the defendant, Electric Company, in support of its defense to the action in this case which we have concluded should be discussed because these propositions appear often in negligence cases. The first proposition is the contention of the defendant, Electric Company, that the facts in the instant case show that the county and its employees committed a misdemeanor because they violated Mississippi Code Annotated sections 7015-12, 7015-13, 7015-16 (Supp. 1964) by operating a dragline under an electric power line within eight feet of the wire. These sections make it a misdemeanor for any person to engage in any activity, excavation, etc., operation and storage of tools, machinery, equipment and apparatus "where to do so would bring such person or such thing within eight (8) feet of a high voltage overhead line."
The defendant, Electric Company, argues that it had no way of knowing that the appellant would violate the law, and that "license by implied consent simply cannot exist where such constructive knowledge is based on the duty to anticipate an unlawful act." This contention, of course, assumes that the county violated the law and that the injured appellant is charged with the county's misdemeanor. It overlooks the required element in a criminal prosecution that the county or the appellant intended to commit acts forbidden by the statute amounting to a misdemeanor. The mere fact that one unintentionally, but negligently, brings equipment within eight feet of a "high voltage overhead line" does not mean that he has committed a misdemeanor. There is a vast difference between a criminal and a negligent act. Moreover, if one violates the statute, this act alone does not insulate the Electric Company against its own negligence in failing to exercise due care in properly constructing its lines and maintaining and inspecting them so as to keep them in safe condition. Miss. Power & Light Co. v. Walters, 248 Miss. 206, 158 So.2d 2, 160 So.2d 908 (1963).
*351 In 52 Am.Jur. Trespass § 84 (1944) it is said that:
"While certain acts of trespass were regarded as crimes at common law, the distinction between trespasses for which there was a private remedy only and those for which there might be a public prosecution was not laid down with much accuracy or precision. It seems to be clear, however, that although every trespass which is a disturbance of the peace is indictable, every trespass which is the subject of a civil action is not an indictable offense. A mere invasion of private property without a disturbance of the peace is not a crime."
To constitute the offense of criminal trespass, intentional acts must be used, or a willful demonstration of force calculated to intimidate or alarm, or acts involving or tending to a breach of the peace. It is obvious, therefore, that in order to show a criminal trespass, it is necessary that it be shown that there was an intent to do an act which is in violation of the statutory misdemeanor, as distinguished from a civil trespass or injury as a result of negligence.
The second proposition to be discussed is the doctrine of assumption of risk. There has been considerable confusion, and sometimes heated debate, among textwriters as to the meaning and application of the doctrine of "assumption of risk." 65A C.J.S. Negligence § 174(1) (1966). It is said by this authority that:
"The doctrine of assumption of risk was originated primarily and had its principal focus in actions by workmen against employers for injuries incurred in employment, and, while under some authorities the doctrine is limited to controversies between master and servant and is not applicable in the absence of any contractual relation between the parties, there is ample authority for the view that in its broader sense the doctrine of assumption of risk may extend beyond contractual relations and master and servant cases and may apply to preclude recovery in negligence cases * * *.
"The doctrine of assumption of risk, assumed risk, etc., is said to rest on, or be in its nature, effect, and import, the equivalent at least of, the principle expressed by the maxim, Volenti non fit injuria. The maxim is predicated on the theory of knowledge and appreciation of the danger and voluntary assent thereto and involves the taking of a calculated risk."
The whole theory of assumption of risk is based either upon a contract to assume the ordinary dangers incident to employment, or the consent of the person injured to assume the risk after full knowledge and understanding of the danger. One who is not an employee, and who performs an act without full knowledge and understanding of the danger, does not consent to the consequence of the risk assumed. Understanding and consent may be shown by circumstances. The cases reported in this jurisdiction are clear on this point. A great many cases in our jurisdiction have defined and set out the doctrine of assumption of risk.
In the case of Watson v. Holeman, 169 Miss. 585, 153 So. 669 (1934), this Court has said: "Although limited exceptions are admitted, the doctrine of assumption of risk ordinarily appertains only to contractual relations * * *."
In the case of Cumberland Telephone & Telegraph Company v. Cosnahan, 105 Miss. 615, 62 So. 824 (1913), where a telephone company was negligent in permitting its wires to become entangled with the wires of an electric company, a workman for the telephone company assumed the risk as to the telephone company, but not as to the negligence of the electric company. In that case the Court pointed out that the electric company must use the highest degree of care.
*352 Wallace v. J.C. Penney Company, 236 Miss. 367, 372, 109 So.2d 876, 877-878 (1959), is a case where a woman slipped and fell in the foyer of a store on a wet floor. The trial court granted an instruction on the assumption of risk doctrine, and this Court said:
"This instruction was error because it erroneously applied the assumption of risk doctrine, which is pertinent when a party voluntarily and knowingly places himself in a position or submits himself to a condition, appreciating that injury to himself is likely to occur at any time so long as such position or condition continues. * * * This eliminates any distinction between assumption of risk and contributory negligence. Under our comparative negligence statutes, Miss.Code 1942, Secs. 1454, 1455, the instruction was also error because it denied the jury its right to weigh the respective negligence, if any, of the parties."
In the case of Elias v. New Laurel Radio Station, 245 Miss. 170, 179, 146 So.2d 558, 561-562, 92 A.L.R.2d 1065 (1962), a bowler brought an action against a bowling alley for injury sustained while bowling because he got his shoes wet on liquid on the floor, causing him to slip and fall. The court granted a peremptory instruction, and this Court held that the bowler was an invitee, and after having quoted from 65 C.J.S. Negligence § 174, with reference to the doctrine of assumption of risk, said:
"No person can assume a risk that he does not know exists. * * * His injury was caused by his unknowingly stepping in the wet substance on the floor. In 19 Miss.L.J. p. 370, `The elements which must be found in order to constitute a defense of assumption of risk are generally stated in some such terms as follows: (1) Knowledge on the part of the injured party of a condition inconsistent with his safety; (2) appreciation by the injured party of the danger in the condition; and (3) a deliberate and voluntary choice on the part of the injured party to expose his person to that danger in such a manner as to register assent on the continuance of the dangerous condition.'"
In Mississippi Power & Light Company v. Walters, 248 Miss. 206, 255-256, 158 So.2d 2, 22, we said:
"We think there is no merit in the appellant's contention that, since the plaintiff had been warned of the danger of coming in contact with the power lines, the plaintiff assumed the risk of being electrocuted by coming in contact with the wires and was therefore barred of his right to recover against the Power Company."
We then discussed the Cumberland Telephone & Telegraph Company v. Cosnahan case and said:
"The Court also held in that case that no contributory negligence, whether simple or gross, if negligence can be thus classified, will bar a recovery, but will simply cause a diminution of the amount thereof."
See also: Kelley v. Sportsmen's Speedway, Inc., 224 Miss. 632, 80 So.2d 785 (1955); Saxton v. Rose, 201 Miss. 814, 29 So.2d 646 (1947).
It is shown in the instant case that the plaintiff was told that the power line was dangerous, and that he should either be on the dragline or away from it when the dragline was working around the wires. It is then contended that the plaintiff knew of the danger and therefore assumed the risk to work near the dragline at a time when it was under the wires. This alleged warning could also have been understood by the plaintiff to have meant that if he would stay away from the dragline when it was working under the wires he would be safe, and he would not have therefore been fully informed as to the danger, so that he could have made an intelligent *353 choice as to whether he should consent to work under the circumstances or refuse to do so.
It is a rare case, indeed, where one who is under no contractual relationship requiring him to assume the ordinary risk of his occupation  but who knowingly consents to assume the risk of electrocution or injury from some other deadly agency calculated to destroy him  acts in such a venturesome manner as to bring into operation the legal doctrine of volenti non fit injuria as a defense in a suit for his injury.
The facts in the instant case do not bring it within the requirements necessary to establish the defense of "assumption of risk" doctrine.

III
The next issue to be determined is whether or not the Electric Company is liable to appellant for the injury received under the facts in this case.
The Electric Company insists that it had a right to be on the land here involved by virtue of Mississippi Code Annotated sections 2778, 2780 (Supp. 1964). These sections give companies distributing and selling electricity "the right of eminent domain", and the right to "erect, place and maintain their posts, wires and conductors along and across any of the public highways, streets or waters and along and across all turnpikes, railroads and canals, and also through any of the public lands * * *. The same shall be so constructed and placed as not to be dangerous to persons or property * * *."
The Electric Company reminds us that in the case of Willmut Gas & Oil Company v. Covington County, 221 Miss. 613, 71 So.2d 184 (1954), this Court described the right of the electric company upon the public lands as "being a revocable easement"; and they also quote that portion of the opinion in City Council of Greenville, etc. v. Thomas, 241 Miss. 633, 644, 131 So.2d 659, 662 (1961), wherein this Court said: "The declared public policy of this State, as evidenced by such statutes as Sections 2778, 2780, 7723, 7737 and 4070, Code of 1942, is to encourage the development of the public utilities by affording them the right to place their lines along the streets and highways." The Electric Company then insists that consequently it "was not only an occupant of the premises * * * but was a `lawful occupant' and the holder of an easement to that extent."
Assuming, but not deciding, that the Legislature can grant a "revocable easement" upon the streets and public lands of the State, does that give the Legislature the right to grant a "revocable easement" interest in the lands of a railroad or private landholders? A continuous easement is no less than an "interest in land." Jenkins v. McQuaid, 153 Miss. 185, 120 So. 814 (1928-1929); 28 C.J.S. Easements § 1 b. (1941).
It is true that a railroad is a highway in a certain sense, and, as such, may be controlled by the Legislature of a state under its police power, but it is also private property, and, as such, is entitled to the protection guaranteed to property owners under the Federal and State Constitutions, so that it can only be taken under the power of eminent domain, with compensation to the owner. Western Union Tel. Co. v. Pennsylvania R.R. Co., 195 U.S. 540, 25 S.Ct. 133, 49 L.Ed. 312 (1904).
Our own Constitution guarantees that "Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof * * *." Miss.Const. 1890 Art. III, § 17. Moreover, this Court has pointed out that damages must be paid to the railroad for the taking of railroad property for the construction of a telegraph line on the railroad right-of-way. Mobile & O.R.R. Co. v. Postal Tel. Cable Co., 76 Miss. 731, 26 So. 370, 45 L.R.A. 223 (1899).
Mississippi Code Annotated section 2778 (1956) provides that railroad property acquired for the purpose of erecting hydro-electric *354 lines upon the railroad is subject to the requirement of eminent domain laws of this State, and Mississippi Code Annotated section 2779 (1956), provides that the Railroad Commission has jurisdiction as to the manner in which the "poles, wires and conductors shall be constructed."
The general rule, as stated in 18 Am.Jur. Eminent Domain § 178 (1938), is that:
"When a telegraph company acquires by eminent domain the right to construct and maintain its line along a railroad right of way, it is the general rule that there is a taking of the property of the railroad company, and a statute authorizing the location of such a line is unconstitutional unless it contains proper provision for compensation. Statutes and constitutional provisions giving rights of way for telephone and telegraph lines, and declaring railroads to be highways, will not be constructed as granting easements and depriving railroads of their private ownership of their rights of way." (Emphasis supplied.)
In the case of Whitworth v. Mississippi State Highway Commission, 203 Miss. 94, 33 So.2d 612 (1948) this Court pointed out that the Commission only obtained an easement over the lands of a landowner by the exercise of eminent domain proceedings and that the landowner was entitled to compensation as "additional servitude" for the construction of electric lines upon the property of the owner.
In the case of Berry v. Southern Pine Electric Power Association, 222 Miss. 260, 76 So.2d 212, 58 A.L.R.2d 508 (1954), the landowner brought suit against the electric power company to recover damages from the company and to obtain a mandatory injunction to require the company to remove electric power lines from the highway right-of-way previously sold to the State Highway Commission for highway purposes. This Court held that if the landowner had been damaged, he was entitled to compensation.
In the case of Mississippi Valley Gas Company v. Boydstun, 230 Miss. 11, 92 So.2d 334 (1957), this Court disallowed additional compensation for additional servitude, because the statute involved at the time of the conveyance to the highway, was said to be incorporated in the conveyance, and it contemplated the use of the highway for gas lines.
Although the authorities with reference to state highways are interesting and bear upon the question as to what title is acquired in state roads, they are not decisive as to the question of private property such as railroads and private roads. We are convinced that a hydro-electric company can obtain no interest in the lands of a railroad by simply building its lines on the railroad right-of-way. Louisville & N.R.R. Co. v. Western Union Tel. Co., 195 Ala. 124, 71 So. 118 (1915); 29A C.J.S. Eminent Domain § 131 (1965).
We are of the opinion that the Electric Company had no legal "interest" in the land of the Railroad Company so as to give it an easement in the use of the property. The Legislature does, however, have authority to require a railroad to license private hydro-electric companies to cross its tracks. Miss. Code Ann. § 2779 (1956). It appears, therefore, that the right of the Electric Company on the land of the Railroad Company, without condemnation proceedings, is that of a continuous revocable licensee; otherwise, the statutes giving the Electric Company the right to put its lines on the property of the Railroad Company would be, in effect, a taking of the Railroad Company's property for the use of the Electric Company, without condemnation. Section 2779, supra.
In either case, however, the question as to whether or not an electric company can defend a suit for damages based on negligence, on the theory that the person injured on its high-voltage lines, was either a "trespasser" or an "invitee" upon the lands of another across which the electric company *355 has constructed its lines, has given the courts considerable concern. Authorities are divided on the issue. These authorities are collected under 18 Am.Jur. Electricity § 67 (1938); Annot. 56 A.L.R. 1030 (1928). The textwriter of 26 Am.Jur.2d Electricity, Gas, and Steam § 70 (1966), has this to say:
"The question whether one may escape liability for injuries inflicted upon the ground that the person injured is a trespasser as to a third person, especially in the case of high-tension wires maintained over private property, is one upon which there is a sharp conflict of authority. Some cases hold, in line with the principle that the foundation of liability is the reasonable anticipation of the presence of a party, that one maintaining an instrument so insidiously deadly as an uninsulated high-tension power line, in a place where people may be expected to be imperiled by it, ought not to be permitted to escape liability for injury actually inflicted because the injured person was a trespasser or mere licensee so far as the property owner was concerned." Citing Annots.: 14 A.L.R. 1038; 56 A.L.R. 1030; Humphrey v. Twin State Gas & Elec. Co., 100 Vt. 414, 139 A. 440; 56 A.L.R. 1011; Earl W. Baker Util. Co. v. Haney, 203 Okl. 91, 218 P.2d 621.
In Humphrey v. Twin State Gas & Electric Company, 100 Vt. 414, 418, 139 A. 440, 442 (1927), 56 A.L.R. 1011, 1016 (1928), it was said:
"A trespass is an injury to the possession; and, as it is only he whose possession is disturbed who can sue therefor, so it should be that he, alone, could assert the unlawful invasion when suit is brought by an injured trespasser. One should not be allowed `to defend an indefensible act' by showing that the party injured was engaged in doing something which, as to a third person, was unlawful."
In 29 C.J.S. Electricity § 43 (1965), it is said:
"The doctrine of nonliability to trespassers or licensees has been applied to relieve defendant of liability where the trespass or license was with respect to the property of a third person and not to that of defendant. According to the apparent weight of authority, however, that doctrine has no application to such class of cases, because conceding that plaintiff was a trespasser as to the owner, he was not a trespasser as to defendant, and defendant may be held liable for negligence in failing to exercise proper care and precaution to prevent injury, not only to persons who had a right to be at the place where the injury occurred, as to whom liability for negligence is unquestioned, but also to persons who defendant should reasonably have anticipated might be present and exposed to danger at that place, as in the case of places to which children or other persons are accustomed to resort, although without technical right to be at such places."
The foregoing quotation is set out at length in the case of Scott v. Claiborne Electric Co-Operative, 13 So.2d 524 (La. App. 1943). In the Scott case a man was electrocuted by touching a fallen wire on a dam at a place where he was privileged to cross as a "licensee", and the Court said:
"We believe there is no merit in the defense that deceased was a trespasser when killed. The facts negative this charge. He was in reality a licensee as to Harmon, the owner of the dam. As to defendant, his status was simply that of a passer-by, killed where he had a right to be."
We are of the opinion that we should adopt and follow the great weight of authority to the effect that an electric company is not relieved of liability to persons injured by its lines through its negligence in constructing, inspecting and maintaining its lines, because *356 the person injured was a trespasser on a third party's land.
Since the weight of the authorities requires the Electric Company "to exercise proper care and precaution to prevent injury, not only to persons who had a right to be at the place where the injury occurred * * * but also to persons who defendant should reasonably have anticipated might be present and exposed to danger at that place," the question then as to whether or not the Electric Company in the instant case "should have anticipated the presence of persons" on the lot of land at the "Depot at Stoneville," and whether or not the Electric Company was negligent in the erection and maintenance of its high-voltage lines so as to endanger the lives of such persons, were questions for the determination of the jury.
The testimony on behalf of plaintiff in the instant case (and we must accept as true testimony on behalf of plaintiff) is to the effect that the county was using the land in question at the time the Electric Company constructed its high-voltage lines. The county began to use the land in 1957, and at intervals as many as seventy-five railroad cars of slag would be deposited upon the small plot of land here involved, and even when the slag pile was "cleaned up" there would be four or five dump trucks of slag left on the lot. The Electric Company constructed its lines across this land in July 1960, and it is the contention of the plaintiff that at the time that the Electric Company constructed its lines on the land slag was then stored thereon, either in large or small quantities. The defendant Electric Company denied this assertion and claimed that the lot was "covered with Johnson grass." This testimony was in conflict and was a question for the determination of the jury.
In the case of Mississippi Power & Light Company v. Walters, 248 Miss. 206, 244, 158 So.2d 2, 16 (1963), we said: "Many courts have held that where the circumstances are such that the probability of danger to persons having a right to be near an electric line is reasonably foreseeable, a power company may be held liable for injury or death resulting from contact between such a line and a crane or other movable machine."
The plaintiff contends that after the defendant Electric Company constructed the high-voltage line across the slag pile, slag was piled up around the poles so that the slag was "pretty high under that power line." The county used the dragline to load the county trucks when the slag was moved away from the storage pile upon the land located under the high-voltage lines, on an average of "every three months," taking from four to five weeks for each quarterly operation. The division engineer for the defendant Electric Company testified that it was not the uniform practice of his Company to inspect distribution lines, but that they were inspected at irregular intervals, and they would have been inspected at some time prior to the date of the injury.
The plaintiff introduced testimony to show that the high-voltage lines were not constructed and maintained in compliance with the requirements of Mississippi Code Annotated section 2778 (1956), wherein it is required that the Electric Company construct and place its lines so as "not to be dangerous to persons or property." On the other hand, the Electric Company offered evidence to show that the lines were constructed in accordance with the requirements of the usual mode of construction set out in the "National Electric Safety Code."
The care required of an electric company in the construction, inspection and maintenance of high-voltage electric lines has been discussed in many cases throughout this Nation. The care required in the use of this deadly agency increases as progress is made in the use of machinery and in the expansion of the ever-increasing population. Whereas a height of 13 1/2 feet from the ground was considered to be adequate for an electric line in 1942 (Roberts v. Mississippi *357 Power & Light Company, 193 Miss. 627, 10 So.2d 542 (1942), the Legislature of Mississippi amended section 2778, Mississippi Code of 1942, by Chapter 418, Laws 1962, so as to require electric companies in all cases to construct lines so as to meet specifications of the National Electric Safety Code as a minimum requirement.
The textwriter in 18 Am.Jur. Electricity section 48 (1938), expresses the majority rule in the following language:
"While the measure of duty resting upon electric companies in order to exonerate them from liability for negligence is expressed by the courts in forms varying from reasonable or ordinary care and diligence to a close approximation to the view that they are insurers, yet the generally accepted rule in such cases, as in determining liability for negligent injuries generally, is that such companies are bound to use reasonable care in the construction and maintenance of their lines and apparatus  that is, such care as a reasonable man would use under the circumstances  and will be responsible for any conduct falling short of this standard. The degree of care which will satisfy this requirement varies, of course, with the danger which will be incurred by negligence and must be commensurate with the danger involved. According to numerous decisions, where the wires maintained by a company are designed to carry a strong and powerful current of electricity, so that persons coming in contact with them are certain to be seriously injured, if not killed, the law imposes upon the company the duty of exercising the utmost care and prudence consistent with the practical operation of its plant to prevent such injury, especially where high-tension wires are suspended over the streets of populous cities or towns, for here the danger is great, and the care exercised must be commensurate with it. The law is complied with when the company provides such a protection as will safely guard against any contingency that is reasonably to be anticipated. The company is not legally bound to safeguard against occurrences that cannot be reasonably expected or contemplated."
See Miss. Power Co. v. Thomas, 162 Miss. 734, 140 So. 227, 84 A.L.R. 679 (1932).
The clear issue here is whether or not the Electric Company could reasonably anticipate that persons using the lot of land here involved under the surrounding circumstances would be injured by its high-voltage lines, and being so advised, whether or not it was negligent in the construction or maintenance of such high-voltage lines. 26 Am.Jur.2d Electricity, Gas and Steam § 163 (1966). This was a question for the jury, and the fact assumed by the defendant, Electric Company, that the county was negligent in using the dragline proximately contributed to the injury of the plaintiff is not a bar to the action; nor is the contributory negligence of the plaintiff, if any, a bar to his suit, since his contributory negligence would only go to the diminution of his damages. Miss. Code Ann. § 1454 (1956). Cumberland Tel. & Tel. Co. v. Cosnahan, 105 Miss. 615, 62 So. 824 (1913); 65 C.J.S. § 111(6) (1966); 26 Am.Jur.2d Electricity, Gas and Steam § 163 (1966).
In the case of Owens v. Yazoo & Mississippi Valley Railroad Company, 94 Miss. 378, 387, 47 So. 518, 521 (1908), in quoting from Bell v. Southern Railway Company, 87 Miss. 234, 30 So. 821 (1901), many years ago, we said:
"So many questions are integrated usually into the solution of the question of negligence, it is so necessary to carefully examine all the circumstances making up the situation in each case, that it must be a rare case of negligence which the court should take from a jury."
See also 26 Am.Jur.2d Electricity, Gas and Steam § 193 (1966).
We have reached the conclusion that the trial court was correct in directing a verdict *358 in favor of the defendant Illinois Central Railroad Company, but the evidence introduced on the part of the plaintiff against the Mississippi Power & Light Company should have been submitted to the jury on the issues there involved. The judgment of the trial court dismissing the suit against the Illinois Central Railroad Company will be affirmed, and that part of the judgment in favor of the Mississippi Power & Light Company dismissing the suit of the plaintiff, Johnnie White, will be reversed and remanded so that a new trial may be had on the issues of negligence and damages, if any, joined between the plaintiff, Johnnie White, and defendant Mississippi Power & Light Company. The cost of appeal will be divided between plaintiff and the Electric Company.
Affirmed in part, reversed in part, and remanded.
ETHRIDGE, C.J., and JONES, BRADY and INZER, JJ., concur.