Murry Chevrolet Co. *v.* Cotton *et al.*

(Division A. Feb. 12, 1934. Suggestion of Error Overruled April 23, 1934.)

[152 So. 657. No. 31052.]

**W. B. Lucas,** of Macon, and **Leftwich & Tubb,** of Aberdeen, for appellant.

**Reily & Parker,** of Meridian, for appellees.

**Cook, J.,** delivered the opinion of the court.

The appellees instituted this suit in the circuit court of Noxubee county against the appellant, Murry Chevrolet Company, seeking to recover damages for the death of their father alleged to have been caused by the negligence of the officers and employees of the appellant. There was a verdict and judgment in favor of the appellees in the sum of five thousand dollars, from which this appeal was prosecuted.

The material facts in this case are not in dispute. The appellant owned and operated a place of business in the city of Macon where automobiles were bought, sold, serviced and repaired, and gasoline sold. The gasoline filling station was in front of the building in which the business was operated. The front part of the building itself was the office and salesroom, while the rear was used as a repair shop, and for the storage of automobiles. This room was about seventy-nine feet in width by one hundred twelve feet in length, and along the south wall thereof there was located a workbench. About seven or eight feet from this bench there was a large stove which was used to heat the room during cold weather, and to keep it comfortable for the employees of the appellant and such other people as might have business therein.

The father of the appellees, Jim Cash, was engaged in business just across the street from the appellant's place of business, and was on very friendly terms with the officers and employees of the appellant, and frequently visited in this repair shop for the purpose of social intercourse, and to warm himself in cold weather. On a very cold day in February, 1933, the said Jim Cash went into the appellant's repair shop or service department and proceeded to or near the stove for the apparent purpose of warming himself, and there remained for a considerable length of time. While he was standing near this stove, the appellant's two mechanics were busy about their duties repairing and servicing automobiles which had been brought into the shop. In the course of the discharge of these duties, one of the mechanics found himself in need of a blowtorch. He went to the workbench and took therefrom a blowtorch which was constructed with a receptacle intended to hold gasoline which furnished the flame when the torch was lighted, and this receptacle was known to contain gasoline when the mechanic started to use it. After he picked up the blowtorch, for some reason, the mechanic decided not to use it, and turned and placed it on top of the hot stove. He testified that he knew it would explode if placed on a hot stove, but did not realize he placed it on the stove.

The appellant's vice president and service manager was standing nearby and saw the mechanic place the blowtorch on the hot stove, but he gave no warning whatever, and turned and left the room, leaving the torch on the stove. A few minutes later, at about the same time, the two mechanics observed the torch on the top of the stove and started to remove it, but it' exploded before they reached it. By this explosion, both the mechanics were burned, and appellees' father was so seriously burned that he died as a result thereof nine days later.

While there was evidence showing that Cash, the ap-

pellees' father, was near the stove at the time the gasoline receptacle was placed thereon, there was no evidence that he saw it placed there, or that he realized that it was on the stove. There was evidence to the effect that water was frequently heated in receptacles placed on this stove, and one of appellant's witnesses testified that there were two other cans on the stove at the time the torch was placed thereon.

The appellant presents three main contentions: First, that the peremptory instruction requested by it should have been granted; second, that the instructions granted the appellees are erroneous; and, third, that the damages awarded are excessive.

Upon this evidence, we are of the opinion that the deceased was a mere licensee upon the premises of the appellant. He had no business to transact with the officers and employees of appellant, and was on the premises for his own pleasure and comfort. This being true, until the servants of appellant discovered that he was in a position of peril, they owed him no duty except not to willfully or wantonly inflict injury on him, but, after discovering him to be in a position of peril, it was their duty to use reasonable care to prevent injury to him. The peril to which the appellees' decedent was subjected was created by the act of appellant's servant. It is a matter of common knowledge that gasoline is highly explosive when brought into contact with fire and heat. Certainly, as the testimony here shows, it is known to all experienced automobile mechanics and service men.

The mechanic who placed the gasoline receptacle on the hot stove testified that he did not know or realize that he placed it on the stove. If it should be conceded, for the purpose of this decision, that this mechanic was thereby relieved of the charge of gross negligence, there is nothing in this record to relieve the appellant's vice-president and service manager of such negligence. He saw this receptacle containing highly explosive and

dangerous material placed on the hot stove, in close proximity to a bystander who was on the premises with his knowledge and consent. As an experienced service manager, he was bound to know, and was charged with knowledge of the fact, that there was imminent danger of an explosion, which might seriously injure this bystander who had been placed in a position of peril by the act of his own servant. He did nothing to remove the danger, and gave no warning thereof, but merely turned and left the scene, leaving this highly dangerous explosive on the hot stove. In so doing we do not think it can be said that he exercised reasonable care to prevent injury to one who was subjected to a peril which was apparent, or should have been apparent to him, or to any reasonable person. In fact, he appears to us to have been guilty of negligence so gross as to amount, in law, to wantonness. This being true, the appellees were entitled to a peremptory instruction on the question of liability, and therefore any alleged errors in the instructions granted to them become immaterial.

It is contended that the court below committed error in overruling the appellant's motion to exclude the evidence touching the expectancy and earnings of the deceased, and the gifts made by him to the appellees. There was proof of the age, health, and earnings of the deceased, and that he contributed each month to the support of the appellees, and no error was committed in refusing to exclude this evidence. Vicksburg R., Power & Mfg. Co. v. White, 82 Miss. 468, 34 So. 331.

Under the facts in reference thereto, as shown by the record, the court below committed no error in failing, of its own motion, to rebuke a display of emotion by the appellees during the argument of the cause before the jury. From a statement of the trial judge in reference thereto, which was made of record during the hearing of a motion for a new trial, it appears doubtful whether the alleged acts of the appellees in this respect were ob-

served by the jury. The position of the appellees in the courtroom and their conduct were carefully observed by the trial judge, and there was nothing developed in this record which would warrant us in holding that he erred in refusing to set aside the verdict on account of such conduct.

The final contention of the appellant is that the verdict is so grossly excessive as to evince passion and prejudice on the part of the jury. We do not think this contention is maintainable. The proof shows that the deceased was sixty-one years of age, and that each month he contributed a portion of his earnings, which were about fifty dollars a month, to the support of the appellees. The testimony is somewhat doubtful as to the exact amount contributed to the appellees, but, aside from that, other proper elements of damage support the verdict. The appellees, children of the deceased, were entitled to recover for the loss of his companionship and society, and for damages to the deceased, consisting of mental and physical suffering. The deceased was severely burned on the arms, body, and face and lived nine days after the accident, during which time he was conscious and suffered the most severe pain.

The verdict in this case is not as large as the recovery permitted by this court in the case of B. Kullman & Co. v. Samuels, 148 Miss. 871, 114 So. 807, on somewhat similar facts. In that case, the deceased was eighty-five years of age; resided with a daughter, one of the appellees, and had no income or estate, and was dependent upon her children for her support. She received injuries to her head, ribs, and lungs, from which she died nine days later, after suffering severe pain which was alleviated as much as possible by the administration of opiates. Doctors' bills and hospital expenses of between seven hundred and eight hundred dollars were incurred, and for these, together with the loss of her companionship and society, and her mental and physical suffering, her chil-

dren were permitted to recover six thousand six hundred sixty-six dollars and sixty-seven cents. See Belzoni Hardwood Co. v. Cinquimani, 137 Miss. 72, 102 So. 470.

We are unable to say that the verdict is excessive, and therefore the judgment of the court below will be affirmed.

Affirmed.