ROBERTSON, Justice.
The Defendant, A. D. Griffin, has appealed to this Court from the $20,000 judgment rendered in the Circuit Court of Adams County, Mississippi, in favor of the Plaintiff, Mrs. Velma Gladden, for personal injuries and property damage sustained by her when defendant drove his automobile into the rear of plaintiff’s automobile on the Mississippi River Bridge between Natchez, Mississippi, and Vidalia, Louisiana.
About 3:45 P.M. on August 27, 1964, a clear and dry day, the plaintiff drove her Oldsmobile automobile on to the Mississippi River Bridge headed west for Vidalia, Louisiana. She noticed that the traffic was moving very slowly in her lane of traffic. The Mississippi River Bridge inclines upward as you leave the Mississippi side, then levels out and gradually declines as it approaches the Louisiana side. The bridge is 4,210 feet long and the boundary between Mississippi and Louisiana is about 1,090 feet from the Mississippi end of the bridge and about 3,120 feet from the Louisiana end of the bridge- The Mississippi bank is a bluff, whereas the Louisiana bank is gradually rising land.
As the plaintiff reached the level portion of the bridge, she noticed a pulpwood truck stalled on the very gradual downward slope of the bridge. The cars back of the truck were stopping and proceeding around the truck when the south traffic lane became open. When the defendant entered the bridge from the Mississippi side he noticed the plaintiff’s car about ten to fifteen car lengths in front of him. He noticed that the traffic was moving slowly, but he proceeded to gain on the plaintiff until he was two car lengths back of her. Defendant testified that he noticed her tail lights go on and he applied his brakes, but was not able to stop. He stated that the speed limits changed on the bridge and he had slowed down to 20 miles per hour at the time he applied his brakes.
The damages to the plaintiff’s Oldsmobile amounted to $209.59. The plaintiff attempted to see Dr. L. P. Coleman at Ferriday, Louisiana, on the date of the *893 accident, but he was out and she was not able to see him until August 31, four days after the accident. He found that she had considerable pain in the back of her neck on both sides and the back shoulder area toward the root of her neck. Later in September of 1964, plaintiff-appellee complained of having back pains on the right side in the sacroiliac area. Dr. Coleman explained that this would be in the right hip and the pain radiated down to the knee. X-rays showed that the appellee had an extra cervical rib on each side in the neck area.
Dr. Coleman testified that he had seen the appellee about 75 times, and that he had prescribed mild types of pain killing drugs a number of times.
She was referred by Dr. Coleman in late September, 1964, to Dr. J. M. Moore of Vicksburg, Mississippi, and on July 31, 1965, to Dr. Jesse L. Henderson of Natchez, Mississippi, both of whom are orthopedic surgeons. Dr. Moore testified that there were muscle knots on both sides of the neck, that the appellee had an extra cervical rib on each side of the neck, that the patient was suffering considerable pain from this whiplash type injury, and that if she continued to have trouble the cervical ribs would have to come out. He testified that there was causal connection between the injury and the pain in the cervical rib area because she had not had trouble before. X-rays showed some arthritis in the lower right back which has caused pain since the wreck. The wreck could have triggered this trouble.
Dr. Henderson removed the extra cervical rib on the right side in August, 1965, in the hope that this would relieve some of the pressure on that side. The appellee complained of migraine headaches, which Dr. Henderson said could be aggravated by her neck injury.
The hospital, drug and doctors’ bills amounted to about $2,066.
During the trial of this case the Appel-lee, Mrs. Gladden, submitted to an examination by Dr. Jack H. Phillips, an orthopedic surgeon of Natchez, Mississippi. Dr. Phillips testified that in his opinion migraine headaches were not related to trauma from automobile accidents, that he found no nerve root involvement, that he found no reflex changes and no muscle weakness or atrophy. Dr. Phillips testified that cervical ribs are congenital and from his experience and what he had read, he knew of no instances in which cervical ribs had been made symptomatic or caused trouble following a whiplash type injury such as Mrs. Gladden had experienced.
Mrs. Gladden was the mother of five children ranging in age from four to sixteen. The four girls were in school, but the youngest, a boy, was at home.
The appellee testified that before the accident, she assisted her husband in his farming operations by driving a pick-up truck, hauling cotton to the gin and wheat and beans to the elevator, that she would pick up parts for farm machinery and carry them to her husband in the field, that she would drive through the pasture and check on the cattle, that she attended functions for the children and led an active physical life. She testified that she was now very much circumscribed in her activities and could do very little to assist her husband or to look after the children.
Dr. Coleman testified that at times she was incapacitated about 75 per cent.
The appellant assigned as error the following :
1. The trial court erred in granting instruction number 1 for plaintiff.
2. The trial court erred in not requiring Mrs. Gladden to answer certain interrogatories propounded to her by Defendant Griffin.
3. The trial court erred in not taking up the jurisdictional question as a sep *894 arate item, to be determined by the trial court.
4. The trial court erred in granting instruction number 2 for Mrs. Gladden.
5. The verdict of the jury and the judgment of the trial court was and is so excessive as to evince passion and prejudice on the part of the jury.
Instruction number 1 for plaintiff reads as follows:
“The Court charges you that if you believe from a preponderance of the evidence in this case that the defendant drove a car into the rear of a car driven by the plaintiff at a point within the State of Mississippi on the Natchez-Vi-dalia river bridge and that the defendant was negligent in the operation of his car so as to cause it to come into contact with the car driven by plaintiff, and that such negligence, if any, proximately caused or contributed to the injuries sustained by plaintiff, if any, then you shall find for the plaintiff.”
The appellant contends that no guidelines •were given to the jury as to what constituted negligence even though seven specific grounds of negligence were charged in the declaration.
The appellee asked for and was granted three instructions. This was the only instruction on negligence. However, the defendant asked for and was granted eight instructions, including two on negligence.
Instruction number 1 for the defendant was a particularly full instruction on the burden of proof and the question of proving negligence against the defendant. We feel that this instruction goes a long way toward curing any possible defect in Instruction number 1 for the plaintiff. Considering the instructions as a whole, we do not feel that the jury was misled or confused by plaintiff’s Instruction number 1.
 As to liability, the jury reached ■the only conclusion they could reach on the undisputed facts of this case. There was no attempt to deny the fact that the appellant, with a clear view of the traffic on the Mississippi River Bridge, failed to slow down enough to stop his car before running into the back of appellee’s car. As a matter of law, the appellant was negligent and his negligence was the proximate cause of the injuries to the ap-pellee and the damage to her car.
 In view of the fact that the ap-pellee was entitled to a peremptory instruction on liability, the deciding of the question as to whether erroneous instructions were granted, is not required and becomes unimportant. The granting of instruction number 1 for plaintiff, even though erroneous, would constitute harmless error. Cases supporting this rule are: Wallace v. J. C. Penney Co., Inc., 236 Miss. 367, 109 So.2d 876 (1959); Murry Chevrolet Co. v. Cotton, 169 Miss. 521, 152 So. 657 (1934); Lizana v. Brown Realty Co., 146 Miss. 758, 111 So. 867 (1927). This rule was also applied by this Court in the case of Union Bankers Insurance Co. v. May, 227 Miss. 881, 87 So.2d 264 (1956), and Horton v. Jones, 208 Miss. 257, 44 So.2d 397, 15 A.L.R.2d 824 (1950).
In his second assignment of error, the appellant contends that the trial court erred in not dismissing the case because the appellee refused to answer interrogatories propounded to her by appellant.
Section 1712 of the Mississippi Code of 1942 Annotated (Recompiled 1956), gives the party questioned 30 days to answer interrogatories. The appellant waited 15 months after the declaration had been filed to propound his interrogatories. They were filed on March 24, 1966; the case had already been set for trial on April 11, 1966, during-the third week of the March, 1966, Term. The appellee did not have the statutory 30 days to answer and we feel that the trial court was correct in not requiring the appellee to answer these interrogatories.
*895 The third assignment of error is that "the trial court erred in not taking up the jurisdictional question as a separate item to be determined by the trial court.” Section 1475.5 of the Mississippi Code of 1942 Annotated (Recompiled 1956), provides in part as follows:
“But if matter which heretofore could constitute a plea be set up in the answer in such a manner as to be clearly distinct and readily separable and go to the entire present cause of action it may, on motion of either or any of the parties, be separately heard and disposed of before the principal trial of the cause, in the discretion of the court; * * (Emphasis added.)
Whether the Mississippi Court had jurisdiction was a mixed question of law and fact. The trial judge could foresee that it would be a close question as to the exact location on the Mississippi River Bridge of the point of impact. It would take a full blown trial and hearing from each witness before a determination could be made. It would have consumed considerably more time of litigants and lawyers at much greater expense to virtually try this case twice. It is noted that Section 1475.5, supra, provides that it may be heard separately and disposed of before the principal trial of the cause, “in the discretion of the court.”
We can not say that the trial court abused its discretion in proceeding to trial on tire merits and waiting until the end of the trial to determine the question of jurisdiction. In fact it appears that the trial judge was considerate of the litigants, their witnesses and the lawyers involved in following this procedure. This apparently met with the approval of counsel for appellant because they asked for and were granted an instruction to the jury on the place of the accident. Instruction number 7 for the defendant reads as follows:
“The Court instructs the Jury for the defendant, A. D. Griffin, that if you believe from the evidence that the accident in question occurred in the State of Louisiana on the Mississippi River Bridge between Natchez, Mississippi and Vidalia, Louisiana, then in such an event, this Court is without jurisdiction to• try this cause, and it is your sworn duty to return a verdict for the defendant, A. D. Griffin.” (Empha'sis added.)
The defendant did not ask for a finding on the plea to the jurisdiction at the close of the plaintiff’s case. Neither did the defendant ask for a separate finding at. the close of the whole case before submission to the jury. The appellant also included in his motion for a new trial, as a ground of his motion, that:
“The Court erred in not taking up the jurisdictional question presented in this cause prior to the trial on the merits, as jurisdictional questions are questions for the Court.”
The Court ruled on all thirteen grounds for a new trial when it found “that said motion is not well taken and the same is hereby overruled.” We find no error in this ruling of the court.
Of the six remaining assignments of error, we will discuss only the assignment that “the verdict of the jury and the judgment of the trial court was and is so excessive as to evince passion and prejudice on the part of the jury.”
The jury was liberal in allowing $20,000 damages. This was probably more than any member of this Court would have voted for if sitting as a member of the jury, but we can not say that the jury evinced bias, passion and prejudice against the defendant in rendering such a verdict. Highly competent and qualified medical doctors testified that the plaintiff had suffered a great deal of pain over an extended period of time as a result of injuries received in the collision.
Mrs. Gladden had not had any trouble with the extra cervical ribs nor with ar~ *896 thritis in the lower right back until she was injured in this accident.
She will be greatly circumscribed in her activities from now on and will be forced to adjust to a different pattern of living. She will not be able to assist her husband in his farming operations as she has in the past, neither will she be able to do heavy housework. She will not be able to physically help and assist her children in their school activities, and she will not be able to take part in horse shows with her children as she has in the past. These were the facts before the jury when they retired to consider of their verdict
We can not say that their admittedly liberal verdict was against the overwhelming weight of the evidence, nor can we say that it was so excessive as to evince bias, passion and prejudice against the defendant. The judgment of the lower court is, therefore, affirmed.
Affirmed.
GILLESPIE, P. J., and JONES, PATTERSON and INZER, JJ., concur.