## H. C. HALL *v.* ELLA HALL.

DEED.   *Covenant to stand seized to use.*

A father by deed of gift conveyed certain lands jointly to three adult sons and recited in it as follows: " The land above described being their *pro rata* share of my entire estate, both real and personal that I do now or may hereafter own, the remainder of my estate, real and personal, I reserve for the use and benefit of my younger children." *Held,* that this was not a covenant to stand seized of the remainder of the estate to the use of the younger children, and the deed passed no interest to them.

APPEAL from the circuit court of Lee county.

HON. LOCK E. HOUSTON, Judge.

The appellant, H. C. Hall, was the father of five children, and in consideration of love and affection conveyed to the three oldest certain of his lands. The deed contained the following recital : " I, H. C. Hall, do by this deed of conveyance, give and grant unto my three sons the land above described, the same being their *pro rata* share of my entire estate, both real and personal, that I do now or may hereafter own ; the remainder of my estate, both real and personal, I reserve for the use and benefit of my younger children, to wit : James Hall and Nannie Hall."

At the time this deed was executed James Hall was unmarried and lived with his father. He soon after married, and shortly after his marriage was put by his father upon the land in controversy, being a part of the lands owned by the father at the time of the execution of the deed, and not conveyed in it. The said James Hall, after being in possession of this land for several years, died, leaving a widow, Ella Hall, the appellee, who continued to reside upon the land.

Appellant, H. C. Hall, the grantor in said deed, brought this suit of ejectment against the said Ella Hall to recover possession of the land.

The testimony for the plaintiff was to the effect that James Hall was put upon the said land to help his father cultivate it, and under an agreement that he might cultivate all the land he could with one horse, free of rent.

The defendant then óffered in evidence the above-mentioned deed from the plaintiff, H. C. Hall, to his three sons, which had been duly recorded, and relied on the language of the deed as above quoted as constituting a covenant by H. C. Hall, the father, to stand seized of the said land, it being part of the remainder of the estate, to the use and benefit of James and Nannie Hall. Plaintiff objected to the introduction of the deed on the ground that it did not contain such a covenant as was claimed, and was not evidence of title in defendant, and because, if it were otherwise good, there was no proof of any delivery to James and Nannie Hall, the younger children.

The objection was overruled and the deed read in evidence.

There was evidence by defendant to show that her husband, James Hall, moved on the place and improved it, and always claimed it and treated it as his own.

Under the instructions granted by the court for defendant the language of the deed as above set out was held to be a " trust in favor of James Hall," and the jury were left to determine whether or not James Hall was put in possession of the land in execution of the trust.

The jury found for the defendant and plaintiff appealed, and assigned for error the action of the court in permitting the said deed to be read in evidence by the defendant.

*Clayton & Anderson,* for appellant.

If the deed was good for any purchase in connection with title to this land, it must be so by reason of being a deed to stand seized to the use of James and Nannie Hall, and if so, the use is executed by mere force of the statute of uses, and they would have a perfect deed without possession. 4 Kent Com. 294. However, we think the language does not amount to a covenant in favor of the younger children but was used only to emphasize the statement that the land conveyed to the older children was their *pro rata* share.

There was no delivery of this deed to the younger children, or to any one for them. Delivery to the older children was not a delivery as to the two younger children, unless it be shown that it

was given them for that purpose. *Kearney* v. *Jeffries*, 48 Miss. 343 ; *Harkreader* v. *Clayton*, 56 Ib. 383. It seems, from the evidence, that as far as James and Nannie Hall were concerned, the deed was never considered as vesting title in them either by plaintiff or themselves.

It is true that deeds very inartificially drawn are sometimes held as covenants to stand seized to the use of persons mentioned in them, but in all of them, as in *Cobb* v. *Hines*, 59 Am. Dec. 559, the intention of the parties must govern.

, If H. C. Hall intended to give the remainder of his estate at that time to his two younger children, why did he not do so by the deed or by a separate deed? Had he formally executed a separate deed to them and used such language, it might evidence an intention to stand seized to their use, and this would result ·because (1) it would be made between plaintiff and his younger children for *their benefit*, and (2) it would be delivered to them.

Finally, the proof does not show that James Hall was put on the land in execution of the so-called trust. The verdict should be set aside.

*Allen, Robins & Stribling*, for appellees.

We contend that the deed offered in evidence by the defendant was a good deed to James Hall, that under the · deed he went into possession of the land as his own, and· so claimed it, and that it rightly belonged to appellee, his widow.

The question of fact as to whether James Hall's possession was under the deed was settled affirmatively by the jury, and this court will not disturb the finding.

We think the deed was a muniment of the title to appellee to the land in controversy. The facts and circumstances show that this was the intention of all parties. H. C. Hall was a widower with five children, and was about to be a second time married. He desired to provide for them, and, to avoid any possible trouble about property rights between them and his second wife and her children, if there should be any, he made the deed in consideration of love and affection, and conveyed certain land to his three sons, who were not living with him. James and Nannie Hall were then

living with him, and James was expecting to be married. He expressly provides that the remainder of his estate is reserved for the younger children, and at once puts James in possession of the land in controversy. The latter remained in possession about three years, paying no rent, but claiming the land as his own, and treating it as his own. We submit that the naming of James and Nannie Hall, and the designation of the property they were to have, could have no other purpose or effect than to convey the property to them. As it is in consideration of love and affection, it is a covenant to stand seized to their use, which the statute of uses executes. The mention of this remainder of the younger children was not necessary to explain or emphasize what was already said in the deed.

We cannot say that the father meant to show partiality among his own children without a cause, and leave his younger, and doubtless dearer, children unprovided for. The construction of the deed should be reasonable and agreeable to common sense and common understanding. The construction should be upon the whole instrument, and not merely upon parts, so that every part shall take effect. " *Ut res magis valeat, quam pereat.*" In case of doubt, the "words of the instrument must be most strongly construed against the grantor." 9 Wend. 611.

The fact that upon the execution of the deed the father put his son in possession of the land, shows strongly that he did mean to convey to him the land.

For an able discussion of the question of covenants to stand seized to use, see *Cobb* v. *Hines*, 59 Am. Dec. 559.

CAMPBELL, J., delivered the opinion of the court.

The deed offered in evidence by the defendant should have been excluded, and the verdict should have been for the plaintiff.

*Reversed and remanded.*