Cook *v.* Farley *at al.*

(In Banc. Oct. 25, 1943.)

[15 So. (2d) 352. No. 35439.]

640

642

Henry & Barbour, of Yazoo City, and W. E. Gore, of Jackson, for appellant.

644

**W. I. McKay** and **Brunini & Brunini**, all of Vicksburg, for appellees.

**McGehee, J.,** delivered the opinion of the court.

Under a decree of the chancery court of Warren County, affirming the judgment of the county court thereof, the appellee C. E. Farley was adjudged to be the owner of the oil, gas and other mineral deposits on approximately 200 acres of land which he had purchased through mesne conveyances from B. L. Goss, who had acquired the title to the land on May 29, 1924, from the appellant, Mrs. Ettie C. Cook, and her husband, Dr. E. R. Cook, by virtue of a warranty deed which contained the following exception:

"There is also excepted from this conveyance all oil, gas and mineral deposits on said lands, which the grantors hereto have promised to convey to Aquilla B. Cook," the latter being the son of the grantors therein, who is not shown to have paid, or agreed to pay, any consideration to his parents for said minerals or to have received any deed of conveyance therefor, but who undertook to convey the same to the purchaser of the land, Goss, on May 7, 1928, prior to the execution of the conveyances through which the appellee Farley claims to have acquired as successor in title of Goss the ownership of both the surface rights and minerals in said land.

The decree here appealed from also confirmed the title of the said Farley to the minerals and cancelled as a cloud thereon any claim that the defendants, Mrs. Ettie C. Cook and her son Aquilla B. Cook, may have thereto.

The heirs at law and the administrator of the estate of B. L. Goss, now deceased, were joined as complainants with Farley, and they ask that, in the event Farley should not be adjudged the owner of the minerals as successor in title of Goss to the same, they be awarded damages in their own right against the said Aquilla B. Cook on his alleged breach of warranty in the deed executed by him to Goss for the minerals, the purchase price having been the sum of $200 paid therefor.

The alleged title of Farley to the minerals having been confirmed by the court and the claim of the defendants thereto cancelled, the bill of complaint was dismissed insofar as it sought a recovery either on behalf of the heirs of B. L. Goss or the administrator of his estate, is concerned.

To uphold the decree confirming the alleged title of the appellee Farley to the minerals in controversy, it would be necessary that we adopt at least one of the following legal theories: (1) That the language of the exception contained in the land deed from Mrs. Cook and her husband to their grantee Goss was sufficient to grant and convey the minerals to their son Aquilla B. Cook; (2) that

the exception therein was wholly inoperative and of no effect, so that the deed conveyed a fee simple title to Goss as though it had contained no exception of the minerals; (3) that the terms of the land deed from the Cooks to Goss had the effect of creating an obligation on their part to convey the minerals to their son which could be later transferred by him to Goss as an enforceable equity in favor of the latter or his vendee; (4) that Mrs. Cook, as former owner of the land, has by her recital in the deed to the effect that she had ''promised to convey to Aquilla B. Cook'' the minerals, estopped herself to deny Farley's asserted title, acquired by mesne conveyances through Goss, the vendee of said Aquilla B. Cook; (5) that continuous possession for farming and residential purposes of the surface of the land by Farley under the land deed whereby he acquired title thereto through Goss, together with the color of title to the minerals under the mineral deed from Aquilla B. Cook to Goss, as the alleged predecessor in title of Farley to such minerals, has ripened into a valid title by adverse possession.

In our opinion each of the foregoing theories is wholly untenable. Discussing them in the order above set forth, we find that: First, the son of the grantors in the deed was not a party thereto, it was not delivered to him, and it contains no words of a present grant or conveyance. The language employed in the exception is merely explanatory of the grantors' present purpose or reason for not then conveying the minerals to their grantee Goss. Under what terms and conditions, and for what consideration, if any, they may have promised to convey the minerals to their son at some future date, or whether or not the same were complied with by him, is not disclosed. But it is sufficient to say that the conveyance to Goss for the land contained no words importing a grant of the minerals to the son of the grantors therein. In the case of Hall v. Hall, 66 Miss. 35, 5 So. 523, the grantor in the deed conveyed to three of his sons certain described lands, and then recited therein that ''the remainder of my

estate, both real and personal, I reserve for the use and benefit of my younger children, to wit, James Hall and Nannie Hall.'' Shortly thereafter the grantor placed his son, James Hall, on part of the land reserved out of the deed, and it was contended on behalf of the grantor that this was done merely in order that James might have some land to cultivate rent free, whereas it was contended on behalf of the widow of James Hall that he had gone into possession of the land under color of the deed in favor of the other three sons and had improved the land and claimed it as his own, and that the title thereto had passed to her upon his death. The court held that this deed, when offered in evidence by the widow of James Hall on the trial of an ejectment suit against her brought by the grantor therein ''should have been excluded, and the verdict should have been for the plaintiff,'' the contention on behalf of the plaintiff being that the recital was merely explanatory of the reservation and to emphasize the extent of what was intended to be conveyed; that the younger children were not parties to the deed; and that there had been no delivery thereof to them. Likewise, in the case of Raley et al. v. Raley et al., 121 Miss. 555, 83 So. 740, where Mrs. Jane Raley was the sole grantee in the granting clause of the deed but which contained a provision to the effect that ''I do also for the love I entertain for my children covenant with her and my heirs to warrant and forever defend the title to said land and the other property to them, that is to Jane Raley and my children.'' The court held that these words ''cannot be held to convey any interest in the property to his children, for the reason that they are not words of grant; such words, in some form, being absolutely essential to the passing of an estate by deed. The conveyance is to Jane Raley alone.'' In the case at bar, the conveyance was to B. L. Goss alone. Moreover, the general rule is stated in 16 Am. Jur., Page 469, Sec. 49, as follows: ''In order to transfer title, an instrument must contain apt words of grant which enforce the grantor's intent to con-

vey the land by his deed as distinguished from an intention to convey it at some future time . . . If no words importing a grant can be found in the deed, it is void although in other respects formal and legal." Barataria Canning Co. v. Ott, 84 Miss. 737, 37 So. 121; 26 C. J. S., Deeds, p. 445, sec. 138, subsec. c; 26 C. J. S., Deeds, p. 452, sec. 140, subsec. c; 18 C. J. 342, Sec. 339; 18 C. J. 345, Sec. 348, subsec. c; 16 Am. Jur. 609, Sec. 299; 16 Am. Jur. 610, Secs. 300 and 301.

Second, whether the exception contained in the deed was wholly inoperative, so that the deed conveyed a fee simple title to Goss as though it had contained no exception of the minerals, was also settled by the case of Hall v. Hall, supra, wherein it was held that while no estate passed to the third party mentioned in the deed, it was effective to retain the title in favor of the grantor to the property embraced in the exception. In 26 C. J. S., Deeds, p. 452, Sec. 140, subsec. c, it is stated, among other things, that: "Property. cannot be conveyed by reservation. A reservation, as such, is effective only in favor of the grantor and is ineffectual to create title in a third party or a stranger, but it may, when so intended, operate as an exception to the grant . . ." Also in 18 C. J. 345, Sec. 348, subsec. C, it is stated that: "Although a reservation is ineffectual to create title in a stranger, it may when so intended operate as an exception to the grant." Again the rule is recognized in 16 Am. Jur. 610, Sec. 301, that: "An exception purporting to be in favor of a stranger can not operate as a conveyance to him of the excepted grant, although such an exception is effectual to prevent the title to the excepted land from passing to the grantee." And, while it is there recognized that although grantor's entire title passes to the grantee unqualified by a purported reservation in favor of such stranger, the text further states that: "An exception presents a different case. By accepting the deed the grantee is precluded from asserting title to the excepted land." The distinction between a "reservation"

and an "exception" is discussed in the case of Federal
Land Bank of New Orleans v. Cooper et al., 190 Miss. 490,
200 So. 729, although the terms are frequently used inter-
changeably. However, in the case at bar, the parties to
the deed denominated the recital in regard to the minerals
as being "exception," intended it to be an exception,
and it meets the essential requirements thereof in all re-
spects, even to the extent of being so defined; whereas,
in the case of Federal Land Bank v. Cooper, supra, and
in the case of Hall v. Hall, supra, the grantors used the
term "reserve," and they were nevertheless held to con-
stitute an exception in each instance. And, it is stated in
Summers Oil & Gas, Permanent Edition, volume 1, Sec.
137, page 352, that in determining whether or not a pro-
vision is a reservation or exception "the use of the terms
themselves are not controlling, but the courts look to the
intent of the parties and the nature of the legal interest
sought to be created. Under the definitions of and dis-
tinctions between 'exception' and 'reservation,' as stated
in Shephard's Touchstone, exception has the effect of
withholding from the operation of the grant a particular
portion of the land granted, and a reservation merely
provides for the return of a rent or service, regarded as
issuing out of the land granted; . . ." In Glassmire,
Oil and Gas, Leases and Royalties, Second Edition, Chap.
VII, Page 137, the fact is recognized that these terms are
often used interchangeably and states that "the distinc-
tion as to the extent of the grant is of no practical im-
portance since the property excepted or the estate
reserved is never included in the grant. Legally, a reser-
vation refers to that which has no present existence, but
depends upon future contingencies, or legal relations
thereto being carved out of the corpus of the thing granted
and reserved as a new legal entity or estate . . . In
a grant of land, 'reserving or excepting the minerals'
a separate estate is created in them by way of legal ex-
ception, as they already exist in the land." The au-
thorities uniformly recognize that such a retention of the

minerals under land is legally an exception and that a separate legal interest or estate in them is created by an exception. Therefore, no title to the minerals passed to Goss in view of the exception thereof in his deed from the Cooks, even though the exception was unenforceable in favor of their son.

Third, the terms of the deed from the Cooks to Goss did not have the effect of creating an obligation on their part to convey the minerals to their son such as he could later transfer to Goss as an enforceable equity in favor of the latter or his vendee, for the reasons already stated under proposition Number One, that is to say, since he was a stranger to the deed and is not shown to have paid, or to have agreed to pay, any consideration for the minerals, or to have received a conveyance therefor, it remained within the will and pleasure of the grantors in said deed as to whether a conveyance of the minerals would be executed in his favor at a future date.

Fourth, the recital contained in the deed to the effect that Mrs. Cook and her husband had ''promised to convey to Aquilla B. Cook'' the minerals did not estop her to deny the appellee Farley's asserted title thereto which is alleged to have been acquired by mesne conveyances through Goss, the vendee of the said Aquilla B. Cook, for the reason that it is not shown that she was ever consulted as to the status of the title to the minerals after she had excepted the same in her deed to Goss. On the other hand, it was shown that the appellee Farley examined the original deed from the Cooks to Goss, discussed with the latter the exception contained therein in regard to the minerals, and relied upon the terms of said deed and the recitals of the purported mineral deed from the said Aquilla B. Cook in favor of Goss, wherein the said Cook had undertaken to convey ''all of my right, title and interest, of every kind and description, which I may hold and own in and to the gas, oil, mineral rights and deposits'' in the lands therein described, and not upon any representations or statements made either by the ap-

pellant Mrs. Cook or by her son. In other words, the facts fail to disclose either a technical or an equitable estoppel. In 19 Am. Jur. 603, the rule is stated as follows: "To constitute an estoppel by a deed, a distinct and precise assertion or admission of a fact is necessary. Hence, an estoppel by deed or similar instrument can arise only where a party has conveyed a precise or definite legal estate or right by a solemn assurance which he will not be permitted to vary or to deny. Such estoppel should be certain to every intent." Again at Page 656, Sec. 52 of the said Volume 19 of this text, it is said: "The general rule is well settled that in order to furnish the basis of an estoppel, a representation or assurance must relate to some present or past fact or state of things as distinguished from mere promises or expression of opinion as to the future. A true statement as to the present intention of a party with regard to his future act is not the foundation upon which an estoppel may be built. A person cannot be bound by any rule of morality or good faith, not to change his intention nor can he be precluded from showing such change merely because he has previously represented that his intentions were once different from those which he eventually executed. The reason on which the doctrine of estoppel rests wholly fails when the representation relates only to a present intention or purpose of a party, because, its nature being uncertain and liable to change, it could not properly form a basis or inducement upon which a party could reasonably adopt any fixed and permanent course of action."

Fifth, no title to the minerals could be acquired by the appellee Farley through adverse possession which consisted only in the use and occupation of the surface for farming and residential purposes, coupled with a claim under color of title to the minerals by virtue of the deed from Aquilla B. Cook to Goss, the alleged predecessor in title of Farley to such minerals for the reason that the legal interest or estate in the minerals had been severed from title of the land when Mrs. Cook and her husband

executed the conveyance in favor of Goss, and the record here reveals that no actual possession was ever taken of the minerals, and no entry was ever made on the land for the purpose of exploring for minerals or reducing them to possession. In Glassmire on Oil and Gas, Page 135, Sec. 39, it is said that: "Where a severance of the legal estate of oil and gas has been created, separate and apart from the land, adverse possession of the land is not adverse to such separate mineral estate. But if the surface owner exercises control over the mineral rights, by actual operations, he may acquire title thereto by adverse possession." Also in Thornton on Oil and Gas, Volume 2, Page 775, Sec. 466, it is said that: "Although the landowner has held adverse possession of the surface of the land, under a deed purporting to convey the entire title and interest in the land for a number of years . . . paying taxes and the like, such possession is not adverse to the reservation of the minerals made in a deed of his remote grantor." See also, 1 R. C. L. 738, Sec. 57, and Summers Oil and Gas, Permanent Edition, vol. 1, page 354, Sec. 138. Any instrument constituting mere color of title is wholly ineffectual as against the record, legal title in the absence of adverse possession of the property claimed for the period required by law.

Where there has been a severance of the surface and mineral estates, the authorities uniformly hold that adverse possession must consist of actually taking possession of the minerals by drilling wells or digging mines and capturing or taking possession of the minerals, either by producing and removing them or by holding them capped in a completed well to the exclusion of the mineral title-holder and the world, for the statutory period of adverse possession.

From the foregoing views, it necessarily follows that the decree in favor of the appellee Farley must be reversed and judgment rendered here on behalf of the appellant.

And, we deem it unnecessary to remand the cause for further hearing on the question of Aquilla B. Cook's al-

leged liability to the heirs-at-law and administrator of B. L. Goss on breach of warranty, and which complaint was dismissed by the decree of the court below, since we are of the opinion that no personal judgment can be rendered herein against the said defendant for the reason that as a general rule a purported covenant of warranty does not apply to the property described if the granting part of the instrument conveys only the grantor's present "right, title and interest" in the property involved. In such event, the covenant is restricted to that which is specifically conveyed, namely, the interest of the grantor, since such an interpretation is designed to effectuate the intention of the parties as manifested by the entire instrument. In the case of McDonough v. Martin, 88 Ga. 675, 16 S. E. 59, 60, 18 L. R. A. 345, it is stated: "Furthermore, if the conveyance is only of the grantors' right, title, and interest in the land, the scope of it is not enlarged by a general covenant, but such covenant must be limited to fit the subject conveyed." (Citing Authorities.) And, the court further said: "And it has been held that, in a conveyance merely of the grantor's rights in the land, even the terrible word 'dedi' would not raise a warranty. . . . So the statutory covenant will be restrained where the conveyance is of the grantor's interest only. Gibson v. Chouteau, 39 Mo. 536." And, in the case of Reynolds v. Shaver, 59 Ark. 299, 27 S. W. 78, 43 Am. St. Rep. 36, the Supreme Court of Arkansas denied relief for an alleged breach of warranty in a deed conveying "all . . . right, title, . . . and interest" in particularly described land and quoted Tiedman on Real Property, Sec. 858, as follows: " 'Thus, if a deed purports to convey in terms the right, title, and interest of the grantor to the land described, instead of conveying in terms the land itself, a general covenant of warranty will be limited, and will not be broken by the enforcement of a paramount title outstanding against the grantor at the time of the conveyance.' " Moreover, we find that the plea of the statute of limitations on behalf of the defendant Aquilla

B. Cook was amply sustained by the proof, as well as the fact that neither the said B. L. Goss, his heirs or administrator, have made good to his grantee whatever damage may have been suffered by reason of the failure of the title to the mineral rights. In order to sustain this claim for damage, it would be necessary to show that a breach of warranty was broken by an eviction, and that if the suit for damage is on behalf of an intermediate grantor, his heirs or legal representatives, it must be shown that such grantor has discharged his liability to the subsequent grantee before suit was brought in order that such immediate grantor, his heirs or legal representatives may maintain an action upon the covenant, since the covenant is one which runs with the land for the protection of the owner during whose tenure the breach occurred. No intervening grantee can maintain the action against his grantor where he has conveyed the land to another and has not satisfied the covenant. 14 Am. Jur. 561-563, Secs. 123-124.

The cause must therefore be affirmed as to the claim of the heirs-at-law and administrator of B. L. Goss, deceased, and reversed as to the claim of title to the minerals made by the appellee Farley, and a decree rendered here in favor of the appellant Mrs. Ettie C. Cook.

Reversed and judgment here accordingly.