TURNER *v.* MORRIS *et al.*

(In Banc. March 13, 1944.)

[17 So. (2d) 205. No. 35563.]

Hannah, Simrall & Foote, of Hattiesburg, for appellant.

E. J. Currie, of Hattiesburg, for appellees.

**Smith, C. J.,** delivered the opinion of the court.

The appellant and the appellees own adjoining portions of Lot 9 in the City of Hattiesburg abutting on Front Street. The appellees have erected a brick building on their land which encroaches on that of the appellant for two feet, beginning at Front Street and running back thirty feet, which will hereinafter be referred to as the two by thirty foot strip of land. The appellant sought, but was denied in the court below, an injunction directing the appellees to remove that part of their building covering this two by thirty foot strip of land owned by him. In September, 1940, the appellant owned all of this land. That now owned by the appellees was then vacant, but on that now owned by the appellant there was and still is a building occupied and used by a bus company as a bus station, the ground between it and Front Street being paved with concrete the width of the building. The appellees desiring to purchase that part of the lot now owned by them employed Edmondson to obtain it for them, who procured a deed thereto to himself from the appellant and immediately conveyed it to the appellees. By these deeds the boundary between the land conveyed to Edmondson and by him to the appellees and that remaining to the appellant was a straight line parallel with and two feet from the bus station building and the

concrete pavement on the appellant's remaining land. Both of these deeds contain this clause: "It is understood and agreed that the grantee is to have a perpetual right to a stairway adjoining the building now known as the bus depot, leading from Front Street to the basement of the building which is to be erected." Shortly after receiving their deed to this property the appellees erected a three story brick building, including its basement, thereon, one side of which adjoins the appellant's property and covers all of this two by thirty foot strip of land. At the end of this thirty feet where the bus station building is the wall of the appellees' building drops back two feet and from there to the rear of the lot is two feet from the bus station building.

About fifteen feet from Front Street a door was left in the wall of this building leading from the pavement on the appellant's property into the building and to two stairways therein, one leading down to the basement and another up to the floors above.

The appellees claim that they had the right to construct their building over this two foot strip of the appellant's land under the stairway clause in the appellant's deed to Edmondson and his deed to them. In this they are mistaken. The reason given by the appellees in support of this claim is that they had the right to the use of this two by thirty foot strip of land for a stairway and that a wall thereon is necessary to sustain this stairway. If a sustaining wall is necessary for a stairway, as to which we express no opinion, that fact has no application here for the stairway clause in these deeds vests the appellees with the right only to use so much of this strip of land as is necessary for the construction of a stairway from the surface thereof down and into the basement of their building. It clearly does not confer on them the right to construct a stairway on this strip of land leading from its surface to the upper floors of the appellees' building.

Two only of the other contentions of the appellees are of sufficient substance to require a response thereto, they

are (1) the appellant is estopped by his and his agent's conduct from objecting to the appellees' building remaining on this two-foot strip of his land; and (2) his right to relief, if any, is only to recover the damages, if any, he has sustained because of this encroachment, and that no such damages were proven. Both of these contentions will be considered together.

The general rule is that a landowner is entitled to an injunction directing the removal of a trespassing structure on his land erected thereon by the owner of adjoining land. "The facts that the aggrieved owner suffers little or no damage from the trespass . . . that the wrongdoer acted in good faith and would be put to disproportionate expense by removal of the trespassing structures . . . and that neighborly conduct as well as business judgment would require acceptance of compensation in money for the land appropriated, . . . are ordinarily no reasons for denying an injunction. Rights in real property cannot ordinarily be taken from the owner at a valuation, except under the power of eminent domain. Only when there is some estoppel or laches on the part of the plaintiff, . . . or a refusal on his part to consent to acts necessary to the removal or abatement which he demands . . . will an injunction ordinarily be refused." Geragosian v. Union Realty Co., 289 Mass. 104, 193 N. E. 726, 728, 96 A. L. R. 1282. If further authority for this is desired, it may be found in 1 Am. Jur. (Adjoining Land Owners) Secs. 17, 18 and 19, and in cases collected in 14 A. L. R. 834, 31 A. L. R. 1302, 76 A. L. R. 304, and 96 A. L. R. 1287.

Counsel for the appellees say that the appellant is estopped from now objecting to this encroachment on his land for the reason that he personally and A. F. Kelly, an agent of his, knew of the encroachment when the building was being erected and made no objection thereto. The evidence discloses, however, that Kelly was in no way an agent of the appellant, the only connection he had herewith being that Edmondson employed him

to assist in obtaining the deed to the land from the appellant to Edmondson. Coston, an electrician, said that he wired the appellees' building, beginning so to do when the walls thereof were four or five feet high, and that thereafter he saw the appellant "at the building a dozen or more times." On being asked "What was Mr. Turner doing when you saw him down there," he replied: "Well he was mostly standing around in front—passing, standing around in front, . . . I wouldn't particularly say standing around the building, going to his lunch or passing going to attend to some business or something like that." And in response to the question, "In other words, he frequently passed that building?" he answered, "Yes, sir." All of this was denied by the appellant and without this denial it falls short of proof that the appellant realized from what he saw when he was at or passing this building that it was being constructed so as to encroach on his land. This being true, no estoppel appears therefrom even if knowledge by the appellant of the encroachment without objection by him thereto would estop him from now complaining thereat, in the light of the fact that the appellees must be charged with knowing that their deed gave them no right to encroach on the appellant's land, as to which it is not necessary for us to express an opinion.

Reversed and remanded.

### DISSENTING OPINION.

**McGehee, J.,** delivered a dissenting opinion.

I concur in the controlling opinion in holding that the appellees did not have the right under the "stairway clause" in the appellant's deed to Edmondson, and in the latter's deed to them, to construct their building so that one wall thereof encroached on the two-foot strip of land in controversy. But I am of the opinion that there was testimony which the chancellor had the right to believe,

to the effect that the owner of the two-foot strip of·land visited the premises while the wall of the appellees' building was in the course of construction, and then made no objection to the location of the wall until after it was completed, at great cost to the appellees.

The chancellor, on hearing the testimony, and doubtless being familiar with the premises in question, since he resides in the city of Hattiesburg where the property is situated, was entitled to take into consideration the location of the new wall with reference to the wall of the bus station, and to find as a fact that if the owner of the two-foot strip of land in controversy did, in fact, visit the premises from time to time after the new wall had reached a height of four or five feet, and until this three-story building had been completed, he would necessarily have noticed that the wall was being constructed so as to encroach to that extent on his land, and would not now be entitled to an injunction requiring the appellees to remove the wall at great expense to themselves, estimated to be approximately $3,000, far in excess of the value of the two-foot strip of land, without regard to what other relief he may be entitled to under the circumstances.

Whether or not the witness, Coston, an electrician, referred to in the controlling opinion, was telling the truth in testifying as he did, which statements were denied by the appellant, was an issue of fact for decision by the trial judge, and I am unable to say that he was manifestly wrong in adopting the testimony of such witness as true, since it is not unreasonable on its face, and so far as the record discloses, he had no interest in the litigation.

If the testimony of Coston was true it would seem to follow that the owner of the two-foot strip of land was put on notice that the appellees were evidently causing the wall to be built thereon under claim of right then being asserted under their deed. The appellant, having made no objection thereto while this great expense was being incurred, should be held to be estopped from ob-

taining injunctive relief, whereby the appellees are to be compelled to remove this wall and reconstruct the same at a distance of two feet away, necessitating the remodeling of one side of their entire building.