# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-CA-00398-SCT

*THE PEOPLES BANK AND TRUST COMPANY*

*v.*

*NETTLETON FOX HUNTING & FISHING ASSOCIATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/31/93 |
| TRIAL JUDGE: | HON. TIMOTHY EDWARD ERVIN |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | W.P. MITCHELL |
| | STEPHEN H. MORRIS |
| ATTORNEY FOR APPELLEE: | JAN P. PATTERSON |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 4/18/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/9/96 |

**BEFORE DAN M. LEE, C.J., McRAE AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. The Peoples Bank and Trust Company, (hereinafter, the Bank), appeals to this Court from an adverse ruling by the Chancery Court of Monroe County in favor of the Nettleton Fox Hunting & Fishing Association, (hereinafter, the Association), concerning the title and ownership of mineral rights within certain lands in Monroe County, Mississippi. The chancellor held that a deed with the following clause, "Oil and Mineral rights have been leased before we came into possession of property title is not herein conveyed," did not constitute a reservation of the mineral estate by the lessor-Bank, resulting in the lessee-Association receiving an entire fee simple interest in the deed. The trier concluded the above language was more of a warranty protection clause, rather than an exception of the mineral estate. Aggrieved, the Bank appeals citing the following issue:

> **WHETHER THE DEED CONTAINS A VALID RESERVATION CLAUSE EXCEPTING THE MINERAL ESTATE?**

## STATEMENT OF FACTS

¶2. E. L. Speed owned a fee simple interest in the land in question prior to the conveyance which commenced the issue now confronting this Court. On November 24, 1925, Speed sold the subject 860

acres in Monroe County to the Bank of Amory (later merged into The Peoples Bank and Trust Company). This instrument was recorded December 7, 1925. In this instrument, Speed did not reserve or except to himself any mineral estate.

¶3. Prior to the conveyance to the Bank, Speed had executed an oil and gas lease to Chas L. Tubb, dated April 11, 1925, but not filed for record until October 15, 1926. This lease was for the primary term of ten years and applied only to oil and gas. No production of oil and gas was had both before and after April 11, 1925. The Bank was aware of this Speed-Tubb lease.

¶4. The following year, the Bank executed a warranty deed on the 860 acres to the Nettleton Fox Hunting and Fishing Club, dated July 7, 1926, and filed for record on September 9, 1926. This deed contains the controverted language "Oil and Mineral rights have been leased before we came into possession of property title is not herein conveyed."

¶5. The history of ownership of the mineral estate is as follows: In 1954, the Bank affixed an application for mineral ad valorem tax exemption on the recorded deed containing the above cited reservation. In 1979, the Association prepared a quitclaim deed for the signature of the Bank of Amory, which the Bank (of Amory) refused to sign. In 1982, the Association again tried this maneuver with the (Peoples) Bank (and Trust Company), but to no avail. Then, the Association offered to purchase the minerals for $20,000.00, with a $35,000.00 cap. This offer was also refused by Peoples Bank.

¶6. Over the years, several parties approached either the Bank or the Association in regard to leasing the mineral interest. Neither side ever leased the mineral interest to any party until July 17, 1990. At that time, the Bank executed an oil and gas lease to Jerry Drake. The lessee Drake paid no bonus money and did not file the lease for record. Drake also sought an identical oil and gas lease from the Association, who rejected the offer. The Drake lease expired on July 17, 1991, thus, Drake is not a party to this action.

¶7. At this point, the Association has legal title to both the surface estate and mineral estate of 950 acres adjacent to the controverted 860 acres. There is also an additional adjacent 160 acres the Association purchased from the heirs of V.S. Whiteside. Ownership of the mineral estate of the Whiteside tract is also disputed, but is not an issue in the case at bar. Eventually, the Nettleton Fox Hunting and Fishing Association brought suit to remove cloud on title on the 860 acre tract and to reform deed on May 31, 1991. The Bank counterclaimed for title.

¶8. The trial court held that the above language in the Bank-Nettleton deed did not constitute a reservation or exception by the Bank to the mineral estate. The court found that the Bank was merely trying to protect its warranty and make the Nettleton Fox Hunting and Fishing Association aware that the mineral estate was not covered by the warranty. Aggrieved by this interpretation of the clause, the Bank appeals to this Court.

## DISCUSSION OF LAW

¶9. This Court adheres to the general rule that a valid mineral reservation or exception must contain words "as definite as those required to convey title; and that, if they are not so, the whole property passes." *The Texas Company v. Newton Naval Stores Co*., 78 So. 2d 751 (Miss. 1955); *Richardson v. Marqueze*, 59 Miss. 80 (1881). "Under ordinary rules of construction, all that was not unequivocally and specifically reserved was conveyed by the granting clause." *Thornhill v. System Fuels, Inc*., 523 So. 2d 983, 989 (Miss. 1988). The reservation must contain apt words, and must describe the interest reserved with

certainty. ***Federal Land Bank of New Orleans v. Cooper***, 200 So. 729, 730-31 (Miss. 1941).

¶10. Here, the words used are "Oil and Mineral rights have been leased before we came into possession of property title is not herein conveyed." The statement is suspect because it states that "title is not herein conveyed." Therein lies the ultimate problem. The instrument fails to describe the interest being reserved with certainty, as it speaks to the "leased oil and mineral rights." Thus, the plain language of the deed is of little help as the document is clearly ambiguous.

¶11. The discussion must therefore continue. An instrument that is clear, definite, explicit, harmonious in all its provisions, and is free from ambiguity, must be given effect. ***Pursue Energy Corp. v. Perkins***, 558 So. 2d 349, 352 (Miss. 1990) (citation omitted); ***Gaston v. Mitchell***, 4 So. 2d 892, 893 (Miss. 1941) ("construction aids are available only to interpret ambiguity [and . . . a]mbiguity may not be created in order to make available a rule of construction"). When this Court finds itself proceeding to a rule of construction, we have generally relied on the "four corners" doctrine in interpreting such instruments. ***Pfisterer v. Noble***, 320 So. 2d 383, 384 (Miss. 1975). "Under this [doctrine], an instrument is considered as a whole, in order to ascertain the intention of the parties. (citation omitted). Particular words . . . should not control[; rather,] the entire instrument should be examined." ***Pursue Energy Corp. v. Perkins***, 558 So. 2d 349, 352 (Miss. 1990) (citation omitted). "In other words, an instrument should be construed in a manner 'which makes sense to an intelligent layman familiar only with the basics of English language,' [unless to do so would be to negate] a distinctive *legal* meaning [of a word]." ***Pursue Energy Corp. v. Perkins***, 558 So. 2d 349, 352 (Miss. 1990) (citation omitted). "If examination solely of the language within the instrument's four corners does not yield a clear understanding of the parties intent, the court will generally proceed to another . . . process." ***Id***.

¶12. In this case, the document contains repugnant clauses, and thus, the instrument itself is insufficient for this Court's consideration in deliberating on this issue. We hold that the document is ambiguous in stating "title [to the oil and mineral rights have been leased before we came into possession of the property, and therefore] title is not herein conveyed." This leaves room for considerable doubt as to what was being reserved or whether the clause was a notice of warranty of the prior lease.

¶13. The trial court reached its conclusion that the clause was more of a warranty (or lack thereof) on the oil and mineral rights, than a reservation because of ***Richardson v. Moore***, 22 So. 2d 494 (Miss. 1945). In ***Richardson***, the Edward Hines Yellow Pines Trustees conveyed certain lands to Hoskins-Moore Lumber Company with the deed containing the following provision: "The fee herein is subject to mineral and oil rights, if any, now of record and not owned by the grantors herein and subject also to all public highways." ***Id***. at 495. A week before, Hoskins-Moore, in expectation of Edward Hines Yellow Pines conveyance, had conveyed the same lands to Maude Smith by warranty deed which contained this provision: "Also, reserving the oil and mineral rights on the said lands together with the right to enter upon, explore for and remove the said oil and mineral in accordance with a deed made to us by the Edward Hines Yellow Pines Trustees, conveying to us the said land." ***Id***. It is this Hoskins-Moore to Smith deed that the Court had to construe. The ***Richardson*** Court found that "it is clear that Hoskins-Moore, when they prepared their deed to Mrs. Smith, knew Hines was going to convey the lands to them, but were not certain what provision, if any, the deed would contain with reference to the minerals." ***Id.*** at 496. Because the Hoskins-Moore to Smith deed used the language "in accordance with a deed made to us . . . ," the Court held that the reservation was not really a reservation. Otherwise, "[i]f the grantors intended to except the minerals outright, there was no need to use that expression. They could have easily said, 'But all minerals

are hereby excepted.'" *Id.* Moreover,

> there the circumstances surrounding the parties and the reference to the Hines deed show clearly that Hoskins-Moore were simply trying to protect their warranty to Mrs. Smith from whatever reservation, or exception, the Hines deed might contain, and not that they were attempting to retain in themselves title to the minerals in the lands conveyed.

*Id*. at 496. "The deed to Mrs. Smith excepted the minerals in accordance with that deed, which, in fact, was not an exception at all." *Id*.

¶14. This case is on point to the case *sub judice*. The controverted language here, as in *Richardson*, also makes a reference to a previous deed, by stating "Oil and Mineral rights have been leased before we came into possession. . . ." Likewise, if the Bank simply wanted to except all minerals, it could have stated so without any reference to a previous oil and gas lease. Withholding all mineral rights from the conveyance could have been accomplished with ease. The following simple, albeit standard language was all that was necessary for the Bank to make clear its' intent: "Less and except all oil, gas and mineral rights."

¶15. The *Richardson* Court noted that the Hoskins-Moore to Smith deed attempted to reserve only those minerals reserved by grantor, Edward Hines Trustees, by use of the phrase "in accordance with a deed made to us. . . ." To hold otherwise would have required the Court to ignore the reference to the Hoskins-Moore deed from the Hines Trustees. The deed to Smith excepted the minerals in accordance with that deed, which in fact, was not an exception. *Richardson* at 496.

¶16. Returning to the case at bar, similar to *Richardson*, because of the different time frames of the recording dates of the lease and two deeds, when the Bank prepared its deed to the Association, the Bank knew that "something concerning minerals had been previously executed, but not exactly what." The Bank owned all of the mineral estate, subject to the outstanding Tubbs leasehold, at the time of the conveyance to the Association. Thus, if the Bank intended to keep all minerals as occurred in the Hoskins-Moore transaction in *Richardson,* the Bank could have said so in apt, clear and precise language by stating, "All oil and minerals are hereby excepted." This Court cannot ignore the deed's reference to the "oil and mineral rights" lease.

¶17. The Bank claims that its language is a reservation, and the reference to a prior deed is merely superfluous. Responding to *Richardson,* the Bank argues that the reference to the Speed-Tubb lease is merely an "explanation" as to why there is a reservation. *Cook v. Farley*, 15 So. 2d 352 (Miss. 1943).

¶18. In that case, the Cooks conveyed land to Goss by a warranty deed containing a troublesome clause which stated "[t]here is also excepted from this conveyance all oil, gas and mineral deposits on said lands, which the grantors hereto have promised to convey to [their son]." The Court held that "[t]he language employed in the exception is merely *explanatory* of the grantors' present purpose or reason for not then conveying the minerals to their grantee Goss." *Id*. at 355 (emphasis added). This Court found that "no title to the minerals passed to Goss in view of the exception thereof in his deed from the Cooks, even though the exception was unenforceable in favor of their son." *Id*. at 356. The bank relies on the "four corners" doctrine in *Pfisterer* and urges this Court to look at only some of the words in the disputed phrase, rather than "all parts of the instrument as written" as the doctrine requires. *Pfisterer v. Noble*, 320 So. 2d at 384. The problem with the bank's argument lies in the fourth required standard: A valid reservation must describe the thing reserved or excepted with certainty. The bank is asking this Court to accept its selective choice of

some words and exclusion of others within the deed. Under the bank's view, the words "have been leased before we came into possession of property" should not be considered, thus leaving its reservation to read: "The oil and mineral rights--title is not herein conveyed." We reject this argument outright as did the Court in *Manson v. Magee*, 534 So. 2d 545, 548 (Miss. 1988), when the Court stated, "[N]o item shall be stricken or rejected . . . ." *Id.*

¶19. The thrust of the Association's argument is that "[t]he language of a deed is the language of the grantor, and if there is any doubt as to its construction, it should be resolved against him." *Salmen Brick & Lumber Co. v. Williams*, 50 So. 2d 130 (Miss. 1951). In the case at bar, the deed in question was drafted by bank president Borland and the ambiguity within the document must be construed against the bank.

¶20. If the ambiguity of the disputed words does not withhold the mineral fee from the conveyance, what does it except? The chancellor's reasoning reached the same conclusion as the *Richardson* Court, i.e., that the Bank was merely trying to protect its warranty --not reserving any portion of the mineral estate. We agree with the chancellor. When the Bank warranted title to the Association, the Bank's predecessor in title had already leased the premises for oil and mineral purposes. That ten (10) year leasehold, still within its primary term, was owned by another. Thus, neither the Bank nor its grantee, the Association, could execute a valid oil and mineral lease until the expiration of the primary term. The Bank was simply limiting its mineral warranty to the Association by referring to the prior leasehold.

¶21. Protection of warranty was the question raised in *Salmen Brick & Lumber Co. v. Williams*, 50 So. 2d 130 (Miss. 1951). In that case, the deed to Salmen Brick reserved one-half of the minerals to the grantor. When Salmen Brick conveyed the property to Williams, the language from the deed of acquisition was tracked, but failed to mention the outstanding one-half mineral interest. Ultimately, both Salmen Brick and Williams agreed that the first grantor owned one-half of the minerals, but both claimed the remaining one-half interest. This Court in *Salmen* stated:

> [t]he particular issue is the effect of the 'reservation' or exception clause in the second deed of 1926. We hold that it merely described the interest owned by the Salmen Company, was designed to protect the grantor's warranty, the grantee therein received all of the minerals (one-half) owned by the grantor.

*Id.* at 566.

¶22. However, because Salmen Brick Company failed to mention the outstanding minerals, it passed title to one-half interest. The prior grantor could not be divested of his one-half interest by this deed, therefore, Salmen Brick was required to suffer the loss, rather than the grantee. Salmen Brick was bound by its own chosen words. The Bank, here too, must be bound by its words of choice, words which refer to the mineral ownership, the prior conveyed leasehold interest withheld from the warranty.

## CONCLUSION

¶23. The chancellor properly analogized this case to *Richardson v. Moore* and found that the Bank conveyed all mineral rights, but protected its warranty in the process. We agree. The Bank's claim of "apt words" and "certainty" invoking the "four corners" doctrine then asking this Court to delete words within the questionable phrase as irrelevant is rejected. We must affirm the chancellor.

¶24. **JUDGMENT AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE AND ROBERTS, JJ., CONCUR. MILLS, J., NOT PARTICIPATING.**