ROBERTS, J.,
for the Court:
¶ 1. Residential Advantage Development LLC and Matthew Avery (collectively “RAD”) appeal the Hinds County Chancery Court’s grant of the Ross family’s request for permanent injunctive relief.[1] At issue is Lot 20, Block F of Beverly Heights, Part 2, located in Hinds County, owned by the Ross family, but upon which *478 RAD, which owns Lot 21, mistakenly built a residence. RAD asks this Court to determine whether the chancery court erred in failing to consider ejectment as an available equitable remedy. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On July 24, 2009, RAD was issued a forfeited tax land patent covering Lot 21, Block F of Beverly Heights, Part 2. RAD constructed a residence on an empty lot it believed to be Lot 21; however, the empty lot was actually Lot 20, belonging to the Ross family. It was not until the construction was complete that RAD had a survey conducted, and it was discovered that the residence was built mistakenly on Lot 20 instead of Lot 21.
¶ 3. Following this discovery, RAD filed suit on May 12, 2011, requesting the chancery court impose a constructive trust on the lot and, following a trial on the merits, compel the Ross family to sell Lot 20 to RAD for the unimproved value of the lot. The Ross family filed its answer and a counterclaim for injunctive relief in the form of a permanent injunction for RAD to remove the residence from Lot 20.
¶ 4. Trial began in the chancery court on May 29, 2011. RAD presented three witnesses at trial: Craig Lipka, Kenneth Williams, and Kenneth Avery. Lipka, a managing partner of RAD, testified that according to Mississippi land databases, the lot RAD owned was vacant and unimproved, when in actuality, the prior owner, who had owned Lots 21 and 22, had built a house on Lot 21 and not on Lot 22 as the city land databases indicated.[2] He also testified to the extent of difficulty and cost RAD would incur to move the residence off of the Ross family’s lot. Lipka also testified that RAD would be willing to compensate the Ross family for the original, unimproved lot, or should the Ross family want to keep the lot, have the chancery court award RAD the cost of the residence, as it is an improvement on the lot. On cross-examination, Lipka acknowledged that if RAD had conducted a survey of the lot prior to beginning construction, it would have become apparent that it was not the correct lot. But Avery later testified that a pre-construction survey is generally not done in a platted subdivision recorded with the county or city “unless there would be some reason to assume that [there] was an issue with the lot line or an encroachment or something else.” Both Lipka and Avery testified that RAD never received notice from the Ross family or anyone in the community that it could be building on the wrong lot.
¶ 5. Williams, a certified residential appraiser, testified that the value of Lot 21, in its vacant and unimproved state, was approximately $7,100, and that the appraisal values of Lot 20 and Lot 21 would be substantially similar.
¶ 6. The Ross family provided the testimony of Dwight Ross. Ross testified that the family owned several adjacent lots in the area, and had no intention of selling those lots, as there may have been future commercial or mixed-use zoning opportunities. According to Ross, “[w]e wanted to control ... what was being placed next to our commercial lots[,] and that [is] why we definitely did not have intentions of selling [Lot 20] or even putting anything on it.” *479 Ross also testified that while he had seen construction of a residence in that area, he could not tell that it was on the Ross family’s lot and knew that two lots in the area did not belong to his family on which the residence could be constructed. There was no other evidence that any members of the Ross family knew that RAD was constructing a residence on their lot but remained silent on the mistake until construction was complete.
¶ 7. The chancery court entered an order on June 7, 2012, granting the Ross family permanent injunctive relief and ordering RAD to remove or demolish the house built on the Ross family’s lot within ninety days. RAD filed a motion to alter or amend the judgment, and a hearing before the chancery court was held on August 24, 2012. Then, on November 9, 2012, the chancery court entered an order denying RAD’s motion to alter or amend the judgment. RAD filed the present appeal.
¶ 8. On appeal, RAD raises three issues:
I. Whether the [chancery] court committed error in not granting relief codified under the Mississippi ejectment statutes.
II. Whether the [chancery] court committed error in its exclusive reliance on Turner v. Morris[, 196 Miss. 297, 17 So.2d 205 (1944)].
III. Whether the [chancery court] committed error in providing inequitable relief.
ANALYSIS
¶ 9. The standard of review for a denial of a motion under Mississippi Rule of Civil Procedure 59 is abuse of discretion. Perkins v. Perkins, 787 So.2d 1256, 1261 (¶ 9) (Miss.2001). On appeal, a chancery court’s findings of fact will not be disturbed absent a finding that the findings are manifestly wrong or clearly erroneous. Lowrey v. Lowrey, 25 So.3d 274, 285 (¶ 26) (Miss.2009) (citing Sanderson v. Sanderson, 824 So.2d 623, 625 (¶ 8) (Miss. 2002)). “Even if this Court disagreed] with the [chancellor] on the finding of fact and might have arrived at a different conclusion, we are still bound by the chancellor’s findings unless [the findings are] manifestly wrong[.]” Richardson v. Riley, 355 So.2d 667, 668 (Miss.1978).
¶ 10. The crux of RAD’s argument is that the chancery court erred in failing to consider and apply ejectment, pursuant to Mississippi Code Annotated section 11-19-95 (Rev.2004), as a proper equitable remedy, and, based on the statute, the chancery court should have awarded RAD the value of the improvements to the Ross-family lot, less applicable rent and damages.[3]
¶ 11. After hearing all the evidence, including RAD’s argument that ejectment was a viable remedy, the chancery court found that the Ross family should not be forced to pay RAD for the mistaken improvements, nor should they be required to convey RAD the property due to RAD’s mistake, particularly because the mistake was due to RAD’s failure to conduct a survey of the property before construction. The chancery court stated: “The only true equitable relief the [chancery c]ourt can provide ... is for [RAD] to bare [sic] the cost of their own mistake and to make the Ross [family] whole again by having the home demolished.”
*480 ¶ 12. As the chancery court pointed out in its order, “[t]he general rule is that a landowner is entitled to an injunction directing the removal of a trespassing structure on his land erected thereon by the owner of adjoining land.” Turner, 196 Miss. 297, 302, 17 So.2d at 207. Further, “[t]he facts that the aggrieved owner suffers little or no damage from the trespass[,] ... that the wrongdoer acted in good faith and would be put to disproportionate expense by removal of the trespassing structures[,] ... and that neighborly conduct as well as business judgment would require acceptance of compensation in money for the land appropriated, ... are ordinarily no reasons for denying an injunction.” Id. (citation omitted). The chancery court was presented with RAD’s ejectment argument, but did not find it to be persuasive, as relief on that ground was not granted or addressed in the chancery court’s opinion.
¶ 13. Additionally, in Ruff v. Estate of Ruff, 989 So.2d 366, 370 (¶ 14) (Miss.2008) (quoting Rotenberry v. Hooker, 864 So.2d 266, 271 (¶ 17) (Miss.2003)), the Mississippi Supreme Court stated:
[W]here the mistake is of so fundamental a character ... where an unconscionable advantage has been gained, by mere mistake or misapprehension; and there was no gross negligence on the part of the plaintiff, either in falling into the error, or in not sooner claiming redress; and no intervening rights have accrued; and the parties may still be placed in status quo; equity will interfere, in its discretion, in order to prevent intolerable injustice.
The supreme court held that “even if [Philip] Ruff satisfied all the conditions set forth in Rotenberry, the chancellor nevertheless retained discretion on whether to grant equitable relief[,]” and “still reserves discretion on whether equity should interfere.” Id. at (¶ 17) (internal citation omitted). Thus, assuming RAD was not grossly negligent in failing to conduct a survey prior to beginning construction, the chancery court had discretion in granting other equitable relief. It is clear that, in this case, the chancery court declined to exercise such discretion.
¶ 14. There is no dispute that RAD will suffer financial loss based on the chancery court’s decision; however, based on our standard of review, the evidence in the record, and the relevant case law, we cannot find that the chancery court abused its discretion in granting the Ross family’s request for injunctive relief and denying RAD’s motion to alter or amend the judgment. This issue is without merit.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ„ CONCUR.

. While it is generally our practice to refer to parties by their proper names, for the sake of clarity we will refer to the appellees collectively as the "Ross family.” The individual appellees are as follows: the executor, administrators, devisees, beneficiaries, and assigns of the heirs-at-law of Dwight Tyrone Ross; Marvin Fisher; Dwight T. Ross Jr.; Donna M. Ross; John Lees Ross; Catherine Ross Parker a/k/a Catherine Lynett Hardin a/ka Catherine Ross Strickland; et al.

. Avery testified to the following:
"Well, as it turns out, the city had [Lot 20 and Lot 21's prior owner's] house on the wrong lot or [the prior owner] built the house on the wrong lot. His house should have been one ... lot [farther] east. [The prior owner] built on the western most of two lots that he owned, which put his house on the wrong lot, which ... moved us one lot over."

. RAD did not raise an ejectment argument before the chancery court until closing arguments at trial and in its post-trial motion, and ejectment was not raised in RAD’s complaint or response to the Ross family’s counterclaim. The Ross family never sought relief under the ejectment statute.