COLEMAN, Justice,
concurring in part and dissenting in part:
¶ 76. I agree with the excellent plurality opinion in all respects save one. ín my opinion, the chancellor considered the issue of estoppel under an erroneous legal standard’." The'issue is subject to a de novo review on appeal, and given the myriad factual issues that must be considered, the case should be remanded for the chancellor to reconsider the issue under the proper legal standard.
¶ 77. The chancellor addressed estoppel in his bench ruling holding that the doctrine of estoppel does not bar the Hasses’ claim solely under Turner v. Morris, 196 Miss. 297, 17 So.2d 205 (1944). The chancellor stated:
In looking at the language of the case of Turner versus Morris, 17 So.2d 205, the very last paragraph states — and there was an estoppel issue raised in that case — “No estoppel appears therefrom even if knowledge by the appellant or conveyer' of the' encroachment without objection by him thereto would estop him from now complaining, in the"-light of the fact that the appellees or the buyers must be charged with knowledge that their deed gave them no right to encroach on the appellant’s land.”
I write because I am of the opinion that the statement of law from Turner' upon which the chancellor relied constitutes an erroneous legal standard. The strict reliance of the Turner Court upon the imputed knowledge of the deed in refusing to consider estoppel improperly changed the focus of future courts’ attention from the person against whom estoppel would oper- ' ate, and it placed- a heavier burden — inconsistent with other pronouncements on the subject of equitable estoppel — on the party in whose favor estoppel would operate.
‘¶78. The Turner Court determined that the evidence presented at trial “[fell] short of proof that [Turner] realized from what he saw when he was at or passing this building that it was being constructed so as to encroach on his land.” Id. at 207. The Court then held that, although it had just stated Turner was not on notice, it need not express an opinion on whether Turner was on notice because the Morrises must be charged with “knowing that their deed gave them no right to encroach on the appellant’s land[.]” Id. at 207. ■ In other words, the Court held that notice charged on a party by a deed always trumps whether the other party, the actual owner of the land, knew or should have known of the encroachment. Without precedent or easelaw support, the Turner Court changed the rule of equity and therefore created a tension, if not contradiction, within our easelaw that I believe should be clarified.
¶ 79. The Court has held:
The rule of equity is, that if one man knowingly, though he does it passively by looking on, suffers another to purchase, and expend his money on land, under an erroneous opinion of title, without making known his claim, he should not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by an equitable estoppel. Dickson v. Green, 24 Miss. R. [612] 618, cited and confirmed.
Nixon’s Heirs v. Carco’s Heirs, 28 Miss. 414 (Miss.Err. & App.1854). More recently, the Court has echoed a similar rule:
If the owner of land with full knowledge, or with sufficient notice or means of *1206 knowledge, of his rights and of all the material , facts, knowingly, though pas» sively, .looks on while another person expends money on the land under an erroneous opinion of title, it would be an injustice to permit the owner to exercise his legal rights against such other person. The owner is bound by the doctrine of equitable estoppel.
Bright v. Michel, 242 Miss. 738, 137 So.2d 155, 159 (1962), Stated another- way, the Court has held-:
[I]t is a-rule of almost universal application that one who stands by and sees another purchase land or enter upon it under a claim of right and permits such other to make expenditures or improvements under circumstances which, call for notice or protest cannot afterwards assert-his own title, against such person.
Martin v. Franklin, 245 So.2d 602, 604-05 (Miss.1971).
¶ 80, Although the Court recognizes es-toppel by'deed, estoppel by deed applies to the sale of land, and it estops a seller from claiming he sold anything different from what was denoted in the deed.[9] The rule of equitable estoppel, as denoted by Nixon’s Heirs, Bright, and Martin; considers a different situation; .it considers a situation where a property owner built a structure on land that he did not own. Equitable estoppel -requires courts to consider the universe of facts undergirding -the situation surrounding the construction, of the structure. The rule supports the goal of determining whether a party “induce[d] another to, act to his prejudice.” Perrien v. Mapp, 374 So.2d 794, 797 (Miss.1979). In other words, the focus point of consideration is whether the party against whom equitable estoppel would be wielded acted in a manner which induced the party wielding it.- Thus, I think that simply holding, as the Turner Court arguably did, that constructive notice imputed from a deed always precludes the application of equitable estoppel, is at odds with the goal and caselaw of equitable estoppel.
¶81. Of course, determining whether equitable estoppel applies is not a straightforward task. Chancellors must weigh the rule, of equity with public-policy concerns.
[Ojwnership of property and the right to have it protected in the courts is so deeply embedded in the law,that the denial of such right is always a matter of grave concern to the courts. The application of the doctrine of .equitable estop-pel [does] deny that right, and the doctrine should be applied cautiously and only when equity clearly requires it be done.
Bright, 137 So.2d at 159. Thus, determining whether equitable estoppel.applies is a fact-intensive analysis. Id. (“[E]very case of equitable estoppel must rest on the particular facts involved. The cases involving equitable estoppel vary as to the facts from case to case.”).
. ¶ 82. The Bright Court concluded that, although the deed contained the correct property .line, equitable estoppel applied. Bright, 137 So.2d at 157, 169. It based its holding on the passivity of the Brights in watching and even helping-the- Michels build a. structure that extended past the Michel .property line, and on the lack- of bad faith on the part of the Michels. Id. at 159. • Under another fact-intensive analysis, the Court of Appeals held that equity required the sale of the disputed land at market price to the Pittses because they *1207 had built a garage on property owped by Cox, Inc. David M. Cox, Inc. v. Pitts, 29 So.3d 795, 804 (¶ 21) (Miss.Ct.App.2009). The holding was based bn the following' facts: the sales agent was a dual agent for both parties, the Pittses were not the experienced party but they-were at fault for failing to have a survey formed, and Cox, Inc., had aided and watched the construction of the garage. Id. at 802-08 (¶¶ 16-20).
¶ 88. I would hold that Tumor contradicts Bright, and confuses our easelaw on equitable estoppel by overemphasizing one fact among the many - to be considered. The Bright rule correctly focuses the court’s attention on the party against whom estoppel would operate. Under the instant facts, if estoppel’applied, it would operate against the Haases. The chancellor failed to consider whether the Haases had “sufficient notice or means of knowledge” (that the Elchoses were building on their land) or whether the house was built under “circumstances which call for notice.” Instead, the chancellor relied solely on Tuner. See Bright, 137 So.2d at 159; Martin, 245 So.2d at 605.
¶ 84. The chancellor failed to employ a fact-intensive analysis, as is appropriate for determining whether equitable estop-pel applies, and there are many facts supporting a finding of equitable estoppel. It is undisputed that the Elchoses bought their land from Kevin Haas. Kevin Haas ordered the survey of the land prior to the sale of the land to the Elchoses. Testimony at trial established that Haas’s trucking? business — Haas Trucking — carried in the dirt used for the Elchoses’ foundation. Haas also admitted that he saw the El-ehoses’ property after the foundation had been laid. Prior to completion of the house,- Hurricane Katrina hit, and Haas then helped Perry Elchos push the house with an excavator to stand it back up, When the property-line dispute was first discovered about two yeai’S after Hurricane Katrina, Lori Elchos testified that Haas stopped by the Elchoses’ house and told her, '“Don’t, worry about it. We’ll figure it out.” Although the chancellor noted that the Haases believed the house was sitting on the Elchoses’ property, and he found that the Haases, did not discover the problem until 2007, whether estoppel applies, should not hinge on whether the Haases knew,[10] but on a fact-intensive analysis that determines whether the Haases had “sufficient notice or .means of knowledge.” Bright, 137 So.2d at 159 (emphasis added).
¶ 85. ’Since the application of equitable estoppel is a fact-intensive analysis, Í would further hold that the trial court is better équipped to make the' determination. Therefore, I would remand for the chancellor to reconsider the issue of equitable estoppel in light of my instant opinion and to reconsider the award of attorney fees pending his -finding on equitable estoppel.
DICKINSON, P.J., JOINS THIS OPINION. LAMAR AND, PIERCE, JJ.,, JOIN THIS OPINION IN PART. ■

. An estoppel by deed is limited as follows:
To constitute an estoppel by a deed, a distinct and precise assertion or admission of a fact is necessary, Hence, an estoppel by deed or Similar Such estoppel ’should be certain to every intent,
Cook v. Farley, 195 Miss. 638, 15 So.2d 352, 357 (1943).

. The plurality bases its holding on a factual determination that Haas had no actual knowledge that the Elchoses were building on his land, (Plur. Op, at ¶ 41), but as I point out here, actual knowledge is not the standard. Rather, the question is whether Haas had sufficient means to know. ■